**Sheila Marie McDonald ROBERTS, Appellant,**

v.

**Ernest A. TATUM, Appellee.**

**No. 1316.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 21, 1978.

Rehearing Denied Jan. 11, 1979.

Lee Mahoney, Mahoney, Shaffer, Hatch & Layton, Corpus Christi, for appellant.

Guy Allison, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

This is a suit for damages brought by appellee, Ernest A. Tatum against appellant, Sheila Marie McDonald Roberts, for injuries sustained as a result of a rear-end collision. Appellant Roberts admitted negligence, in the trial court and requested a trial on the issue of damages only. Trial was to a jury. The jury returned verdict in the amount of $278,000.00 which was rendered against Roberts, who appeals.

The complaints on appeal are directed to the jury's answers to special issues 1, 2, and 3, subsections (a) through (f). The jury in answer to the several elements of damages inquired about, found the following amounts would reasonably compensate the appellee for his injuries:

1 $500.00 for necessary medical and hospital care received in the past;

2 $13,500 for medical and hospital care in the future;

3(a) $7,000 for physical pain and mental anguish in the past;

3(b) $25,000 for physical pain and mental anguish which in reasonable probability he will sustain in the future;

3(c) $67,000 for loss of earning capacity in the past;

3(d) $90,000 for loss of earning capacity which in reasonable probability he will sustain in the future;

3(e) $25,000 for physical impairment in the past;

3(f) $50,000 for physical impairment which in reasonable probability, he will sustain in the future.

These jury awards are generally attacked by "no evidence", "factual insufficient evidence" and "against the great weight and preponderance of the evidence" points. We shall consider the legal insufficiency points according to the tests in *Miller v. Riata Cadillac Company*, 517 S.W.2d 773 (Tex. Sup.1975). And we will apply to the factual insufficiency points the rule in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (Tex.Sup.1951). In sum, though, appellant's arguments under these points of error are not that the awards are totally unsupported by the evidence, but rather that the awards are excessive and show that the appellant did not receive a fair trial. In addition, appellant brings three points concerning the trial court's improper admission and exclusion of certain evidence. Accordingly, appellant prays for a reversal and remand for a new trial, or in the alternative, that we require a remittitur by the appellee of $185,123.94.

In determining whether a verdict is excessive, the court must review only that evidence favorable to the verdict and the jury's determination will not be disturbed as excessive where there is any evi-

dence to sustain it. *Southern Pac. Transp. Co. v. Peralez*, 546 S.W.2d 88, 98 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n.r. e.); *Wharf Cat, Inc. v. Cole*, 567 S.W.2d 228 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). There must be some proof, circumstantial or direct, of bias or prejudice, and in the absence of such proof, this Court is required to give every inference to the evidence in favor of the verdict. *Southern Pac. Transp. v. Peralez*, supra at 98.

A fair summary of the background facts shows these events and circumstances. The accident made the basis of this lawsuit occurred on January 6, 1973, on the ferry which transports persons and vehicles across the ship channel at Port Aransas, Texas. Appellee, a resident of San Antonio, was parked on the Ferry in his pick-up truck when appellant's vehicle struck his truck in the rear. The force of the collision was sufficient to cause major damage to both vehicles.

During the accident appellee's neck was thrown forward into the steering wheel, causing a bruise on his throat and other unknown injuries. Following the accident, Tatum visited Dr. Walthall, who had been his doctor for 42 years. Dr. Walthall x-rayed the appellee's back and prescribed medication. A few days later, appellee's condition began to worsen with increasing neck and arm pain and Dr. Walthall sent him to see Dr. Branch, an orthopedic surgeon. Dr. Branch examined the appellee and prescribed a soft collar. Dr. Branch then recommended that appellee be tested with a myelogram. When the possible dangers of the myelogram, namely, death or paralysis, were explained to the appellee, he refused the test. Since that time the appellee has not entered the hospital but has visited Dr. Walthall for examination and medication of his neck, back and arms.

Prior to the accident herein, appellee was in excellent health with respect to his neck and arms. He had no difficulty performing his job as a switchman with the Missouri, Kansas and Texas Railway Company. This job involved climbing, stooping and bending. Appellee had previously gardened, fished, scuba dived, hunted, flown airplanes, driven his dump truck, both for hire as well as for personal tasks, and performed odd jobs as a carpenter and as an auto and airplane mechanic. All in all, he was a powerful, robust, active, manually-orientated person who enjoyed work and play.

Since the accident, though, he has ceased to enjoy the activities referred to previously. Any physical exertion causes pain. He is no longer able to work and will be unable to do so in the future. He also experiences numbness in his right hand, burning sensation in his arms, and tends to drop things from his hands. He is unable to turn his neck and head so that it is virtually impossible for him to safely operate his dump truck. He now spends most of his time lying around the house.

At trial, Dr. Walthall testified that the appellee's x-rays showed that as a result of the accident, appellant had ruptured two discs and probably a third in his neck. This damage was causing atrophy of the muscles in his right arm, irregular curvature of the appellee's spine and daily pain and discomfort.

Appellant brings forward twenty-nine points of error. Appellant's first eight points complain that the jury's awards for past and future medical expenses is excessive and shows bias and prejudice and that the awards are not supported by legally and factually sufficient evidence. She also complains, in points 27 and 28, that the testimony of Dr. Walthall concerning the cost of future surgery should not have been admitted.

 As to past medical expenses, appellant argues that the testimony shows damages of only $370.45. But the record shows otherwise. Appellant's counsel introduced evidence about medical bills which totalled $216.45 for the period from the date of the accident until sometime in April of 1973. Apparently, $43.00 of this amount represented Dr. Walthall's bills. As of August 25, 1973, Dr. Walthall's total bill from the time of the accident was $68.00, thus, from April 1973 to August 25, 1973, his bill was $25.00. From August of 1973 to the date of

Dr. Walthall's deposition, sometime in 1975 or 1976, Tatum visited Dr. Walthall ten or fifteen times at $13.00 per visit causing a bill of somewhere between $130.00 and $195.00. Assuming fifteen visits was the correct number, the total would be $441.45 ($195.00 plus $216.45) from the date of the accident to the time of Dr. Walthall's deposition. Appellant's counsel, then asked Dr. Walthall if $268.00 represented his total bill from 1973 to the date of the trial, i. e. May 23, 1977. Dr. Walthall replied, "That sounds about right. You are doing the addition." But, considering only the evidence favorable to the verdict, there remained a gap in Dr. Walthall's bills from the time of his deposition in 1976 to the time of trial. The record reflects that appellee stated that in the few years prior to trial he had visited Dr. Walthall for his neck problem at least once a month and sometimes more often. This means that prior to the trial on May 23, 1977, appellee visited Dr. Walthall at least five times multiplied times $13.00 per visit or $65.00, bringing the total bill to $506.45 ($441.45 plus $65.00). And, if Dr. Walthall's deposition were taken in the early part of 1976 this amount would be much greater. We find no bias or prejudice in the jury's granting $500.00 damages for past medical expenses.

About appellant's complaints of the award of $13,500 for future medical expenses, the record demonstrates the following. Dr. Walthall testified that he had no quarrel with the U.S. Government Life Expectancy Table which predicted that a man aged 65 would live an additional 17.2 years. Appellee was 65 years old at the time of trial. Dr. Walthall further testified that assuming no further surgery were performed he expected appellee to incur $500.00 medical expenses per year after the trial. In other words, appellant would incur $8,600.00 medical expenses over the period of his expected life. If surgery were performed, Dr. Walthall expected appellee's yearly expenses to increase considerably over his $500.00 per year estimate. He further testified that in "reasonable medical probability" appellee would need back surgery in the future. Such surgery, Dr.

Walthall estimated, would cost $10,000.00 or $1,000.00 per day for ten days. Thus, the surgery and future yearly expenses would total at least $18,600.00 or $5,100.00 more than the jury's award. Appellant argues, however, that the testimony concerning the cost of the surgery should not have been allowed and should have been stricken when requested because Dr. Walthall could only guess as to how much of the $10,000.00 surgery estimate would represent surgeon's fees. We find no reversible error for two reasons. First, Dr. Walthall's testimony that the cost of surgery would be approximately $1,000.00 per day was admissible because he stated it was based upon past experience observed from others receiving neurological surgery in San Antonio. The fact that an expert's opinion is based upon observation and past experience does not render it inadmissible. *City of Arlington v. Tex. Elec. Serv. Co.*, 540 S.W.2d 580, 584 (Tex.Civ.App.—Fort Worth 1976 writ ref'd n.r.e.); *Coffee v. William Marsh Rice University*, 408 S.W.2d 269, 285 (Tex.Civ.App.— Houston 1966, writ ref'd n.r.e.). Moreover, just because an expert cannot state all supportive data for a conclusion does not negative all probative value of the statement but goes more to the weight to be given the opinion. See *Texas Elec. Service Co., v. Wheeler*, 551 S.W.2d 341 (Tex.Sup.1977). Secondly, even if we were to assume that Dr. Walthall's testimony concerning the total cost of surgery was not admissible, his testimony concerning specific items of the hospital stay, e. g. room costs and medications, show at least a $3,600.00 expense for a ten-day stay. This would total $12,200.00 ($8,600 plus $3,600) for future medical expenses when coupled with Tatum's yearly maintenance expenses, even if we assume no surgery. The jury, however, was not bound by the life expectancy tables. *Greyhound Lines, Inc. v. Craig*, 430 S.W.2d 573 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The jury could have, under the facts of this case, determined that the appellee would live longer than 17.2 additional years and could have awarded additional compensation for future

medical fees. Furthermore, the jury was free to award greater than $500.00 per year assuming the appellee would receive surgery in the future. Thus, even if Dr. Walthall's testimony concerning the total cost of surgery was too speculative, we find no reversible error. Rule 434, T.R.C.P. Appellant's points 1 through 8 and 27 and 28 are overruled.

■ Next, appellant argues in points 9, 10 and 11 that the jury's award for future physical pain and mental anguish is predicated upon legally and factually insufficient evidence and is excessive and shows an unfair trial. We disagree. Appellant argues that the average per annum award for pain and suffering prior to trial is less than the average award per annum after trial, and that these average per annum awards must be the same because all the testimony shows that the appellee's condition will remain the same. First, appellant's argument incorrectly assumes that the appellee's life expectancy is 12.7 years from the date of trial; it is actually 17.2 years. Secondly, appellant assumes that all of the testimony shows that appellee's condition will remain the same. To the contrary there is testimony by both the appellee and Dr. Walthall which indicates that the appellee's condition is worsening and will probably worsen in the future. Thus, appellant's points 9, 10 and 11 are overruled.

Appellant's points 12 through 17 assert that the jury's awards for past and future loss of earning capacity are based upon legally and factually insufficient evidence and are excessive and show an unfair trial.

■ As to loss of past earning capacity, the evidence shows that a switchman working for the railroad which previously employed the appellee earned about $14,000.00 in 1973, $15,000.00 in 1974 and $16,000.00 in 1975. There is no indication of the salaries in 1976 or 1977. Appellant argues that by taking the average earnings of a railroad switchman for the years 1973 through 1975, i. e. about $15,000.00 and multiplying that amount times four, since appellee was going to retire at the age of 65, his age at the beginning of 1977, that

the award would only be $60,000.00, instead of $67,000.00. Appellant's result is incorrect. First, the incomes prior to trial were increasing at about $1,000.00 per year after 1973. The jury was entitled to consider the constant decrease in the value of the dollar and commensurate increase in salaries. See *Southern Pac. Transp. Co. v. Peralez*, supra. Moreover, in testifying before the jury, appellee stated that he did not know whether he would retire at age 65 or not and that the railroad would have allowed him to work until age 80 if he maintained his health. Thus, assuming continuing increases of salary and a decision to continue working after age 65, the jury could easily find a loss in earning capacity for the 4½ years between the accident and trial far in excess of the $67,000.00 they awarded.

■ As far as loss of future earning capacity is concerned, appellant contends that the jury could only speculate as to the $90,000.00 award. This contention is without merit. During the trial, a truck driver testified that in 1970 he could make between $15,000.00 and $19,000.00 per year. This evidence, coupled with the evidence concerning the railroad salaries available to the appellee show that in the future the appellee possessed capacity to earn amounts much greater than $90,000.00 working for either the railroad or driving his dump truck or any other truck. Appellant's points 12 through 17 are overruled.

We next consider the assertions in points 18 through 25 that the award of $25,000.00 for physical impairment in the past and $50,000.00 for physical impairment in the future are founded upon legally and factually insufficient evidence and are excessive and show an unfair trial.

■ Appellant argues primarily that the per annum award for the past physical impairment should equal the per annum award for future physical impairment based upon life expectancy. The law on the matter does not bear out this argument. The jury is not constrained to making precise mathematical comparisons, or to finding with mathematical certainty equality of

damages on a per annum basis for past physical impairment and future physical impairment. Compare *City of Houston v. Jean*, 517 S.W.2d 596, 602 (Tex.Civ.App.— Houston [1st Dist.] 1974, writ ref'd n.r.e.); *Broesche v. Bullock*, 427 S.W.2d 89, 97 (Tex. Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). Because personal injury damages are unliquidated and not capable of measurement by a certain standard, the jury has large discretion in fixing the amount of the award. *Southern Pac. Transp. Co. v. Peralez*, supra at 98.

We think the record shows that the appellee was a very active person outside of his work with the railroad prior to the accident, and that all of his previously enumerated activities were curtailed after the accident. Granted, the appellee still attempts some menial tasks, but the record shows he suffers severe pain and discomfort every time he does so. We find no basis in the record to sustain these points. Compare *French v. Grigsby*, 567 S.W.2d 604, 607 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). Appellant's points 18 through 25 are overruled.

Appellant's point 29 contends that all of the amounts awarded to the appellee were so excessive as to show the denial of a fair trial. In light of our prior discussions, we overrule her point 29.

Finally, appellant argues in point 26 that the trial court erred in sustaining appellee's motion in limine and in not allowing the appellant to introduce any testimony concerning the appellee's retirement from the railroad. The appellant did not, however, properly preserve error. Before a party can correctly claim error on the suppression of evidence by a motion in limine, the party must offer the evidence and secure an adverse ruling from the court. *City of Corpus Christi v. Nemec*, 404 S.W.2d 834 (Tex.Civ.App.—Corpus Christi 1966, no writ). See also *Commercial Insurance Co. of Newark, N. J. v. Lane*, 480 S.W.2d 781 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r. e.). We find no indication in the record that the appellant attempted to introduce this retirement testimony to the court. Appellant's point 26 is overruled.

The judgment of the trial court is affirmed.