ON RETURN TO REMAND
This case is before us once again for a final determination as to whether the jury's verdict was excessive. See Fraser v.Reynolds, 588 So.2d 442 (Ala. 1990), wherein we affirmed the judgment with respect to the liability issues that were raised by the defendants, Bobby R. Lewis and Russell M. Fraser, but remanded the case for a determination by the trial court as to whether the damages were excessive, in accordance with Hammondv. City of Gadsden, 493 So.2d 1374 (Ala. 1986), and Green OilCo. v. Hornsby, 539 So.2d 218 (Ala. 1989). For the following reasons, we hold that the punitive damages awarded were not excessive, but that the compensatory damages awarded to two of the plaintiffs, R. Scott Reynolds and Gregory S. Windham, were excessive.
The defendants filed post-judgment motions challenging the verdict as being excessive. The trial court denied those motions, without comment. With regard to the compensatory damages award, the defendants argued on original submission of these appeals that the jury had failed to take into consideration certain tax benefits that, they said, the evidence showed had been enjoyed by the plaintiffs as a result of their investments in the partnership. At trial, the court instructed the jury to take any proven tax benefits into account, and our review of the record caused us to question why the jury had apparently not taken any tax benefits into consideration. In addition, Lewis argued that the evidence did not support an award against him of twice the amount of compensatory damages awarded against Fraser. Finally, with regard to the punitive damages awards, both defendants argued that the evidence did not support the amount awarded by the jury, and Lewis argued, in particular, that the evidence did not support the award against him of twice the amount of punitive damages awarded against Fraser. Concerned that the verdict might be excessive, we remanded the case for a hearing on the excessiveness issue.
After holding an evidentiary hearing and upon considering arguments of counsel, the trial court declined to reduce the verdict, stating in pertinent part:
 "The issue relating to the tax savings provided to the Plaintiffs was properly submitted to the jury. The Supreme Court's opinion noted that this Court properly instructed the jury to consider any proven tax savings in reaching its verdict. This issue, being a question of fact properly addressed by the jury, was taken into account by the finder-of-fact, and, apparently, was given little credence based upon counterbalancing evidence indicating the lack of utility of the tax savings in light of each Plaintiff's relative tax posture.
 "Upon consideration of the evidence provided at the post-trial hearing, arguments and briefs of counsel and having observed the trial, the actions and reactions of the jurors and the conduct of counsel, the Court is of the opinion and expressly finds that the jury's decision-making process was not tainted by bias, passion, improper motive, or prejudice. The Court further finds that the jury's award does not exceed an amount which will allow for society's goals of punishment and deterrence. Each of the factors set out in Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989), has been considered by the Court. Based upon the foregoing, the Court finds that the verdict is not excessive and declines to reduce it."
In Green Oil Co. v. Hornsby, supra, this Court, discussing the circumstances *Page 450 
under which a jury's verdict loses its constitutional protection and, thus, may be set aside, stated in pertinent part as follows:
 " 'The right to a trial by jury in civil cases is guaranteed by § 11, Alabama Constitution; therefore, a jury verdict will not be set aside unless it is flawed, thereby losing its constitutional protection. Upon finding a verdict to be flawed, the trial court, pursuant to A.R.Civ.P. 59(f), and this Court, pursuant to Code 1975, § 12-22-71, may interfere with it. At what point, however, will a damages award require a finding of a flawed jury verdict?
 " ' "First, it may include or exclude a sum which is clearly recoverable or not as a matter of law, or which is totally unsupported by the evidence, where there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure. In these situations, a trial court may, and should, reduce or increase the amount of the verdict to reflect the amount to which the parties are entitled as a matter of law. Second, a jury verdict may be flawed because it results, not from the evidence and applicable law, but from bias, passion, prejudice, corruption, or other improper motive. . . ."
 " 'Hammond v. City of Gadsden, 493 So.2d 1374, 1378 (Ala. 1986).' [Quoting City Bank of Alabama v. Eskridge, 521 So.2d 931, 932-33 (Ala. 1988).]
 "Thus, the invocation of the trial court's authority under Ala.R.Civ.P. 59(f) to determine the proper amount of recovery and to deny a new trial, subject to [the] filing of a remittitur of the amount in excess of the proper amount, is dependent upon the trial court's holding that the presumption of correctness of the jury verdict has been overcome by a clear showing that the amount of the verdict is excessive. It is also well understood that in considering the adequacy or excessiveness of a verdict, each case must be determined on its own facts, and that neither the trial court, nor this Court, may substitute its judgment for that of the jury. City Bank of Alabama v. Eskridge, supra; Hammond v. City of Gadsden, supra."
539 So.2d at 221-22.
The Court in Green Oil went on to expound on the factors to be considered when reviewing an award of punitive damages:
 "Because the purpose of punitive damages is not to compensate the plaintiff but to punish the wrongdoer and to deter the wrongdoer and others from committing similar wrongs in the future, the proper amount of punitive damages rests largely within the jury's discretion. However, although punitive damages need bear no particular relationship to actual damages, they, nonetheless, must not exceed an amount that will accomplish society's goals of punishment and deterrence. Maryland Casualty Co. v. Tiffin, 537 So.2d 469
(Ala. 1988); City Bank of Alabama v. Eskridge, supra; Roberson v. Ammons, 477 So.2d 957 (Ala. 1985).
". . . .
 "The following could be taken into consideration by the trial court in determining whether the jury award of punitive damages is excessive or inadequate:
 " '(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.
 " '(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard which his conduct has caused or is likely to cause, and any concealment or "cover-up" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.
 " '(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, *Page 451 
so that the defendant recognizes a loss.
 " '(4) The financial position of the defendant would be relevant.
 " '(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.
 " '(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.
 " '(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.'
 "Aetna Life Insurance Co. v. Lavoie, 505 So.2d 1050, 1062 (Ala. 1987), Houston, J., concurring specially."
539 So.2d at 222-24.
Because the right to trial by jury in civil cases is guaranteed by Article I, § 11, of the Alabama Constitution, neither the trial court, nor this Court, can interfere with a jury's verdict unless it is constitutionally flawed. As previously noted, a verdict is constitutionally flawed if it includes a sum that is clearly not recoverable as a matter of law, or if there is an exact standard or rule of law that makes the damages legally and mathematically ascertainable at a precise figure and the damages are set at something other than that precisely ascertainable figure. When a verdict is unconstitutionally excessive, the trial court, or this Court, if the trial court refuses to act, must reduce the amount of the verdict to reflect the amount to which the party in whose favor it is returned is entitled as a matter of law.
Our review of the record indicates that the defendants proved, through testimony and documentary evidence, that the maximum amount of compensatory damages due to Reynolds was $5,671.66, representing his $14,100 investment in the partnership less $8,428.34 in tax benefits that he enjoyed by virtue of his investment losses. Likewise, our review of the record indicates that the defendants proved that the maximum amount of compensatory damages due to Windham was $10,410.25, representing his $28,200 investment in the partnership less $17,789.75 in tax benefits that he enjoyed by virtue of his investment losses. Although the record shows that the defendants also proved that Kenneth Tichansky and Teresa Scholz enjoyed certain tax benefits as a result of their investments in the partnership, the record does not show that the jury was presented with sufficient evidence from which to determine the actual amount of those benefits. Furthermore, our review of the record convinces us that the jury's apportionment of the compensatory damages, under the law of this case, was supported by the evidence.[1] Therefore, we conclude that the compensatory damages awards in favor of Reynolds against Fraser and Lewis should have been reduced by the trial court to $1,890.55 and $3,781.11 respectively, and that the compensatory damages awards in favor of Windham against Fraser and Lewis should have been reduced to $3,470.08 and $6,940.17 respectively.
As previously noted, a jury's assessment of punitive damages also loses its constitutional protection if it is flawed. An assessment of punitive damages is constitutionally flawed, and, thus, must be reduced by the court, if it is either the result of bias, passion, prejudice, corruption, or other improper motive, or, although the result of a properly functioning jury, is nonetheless excessive because it exceeds an amount that will accomplish society's goals of punishment and deterrence. The court's duty to reduce an unconstitutionally excessive punitive damages award was recently cited by the United States Supreme Court as a major reason for that Court's rejecting a due process challenge to Alabama's system of post-judgment review of punitive damages awards. See Pacific Mutual *Page 452 Life Ins. Co. v. Haslip, ___ U.S. ___, 111 S.Ct. 1032,113 L.Ed.2d 1 (1991).
The trial court found that the jury's assessment of punitive damages in this case was not the result of bias, passion, prejudice, corruption, or other improper motive, and our review of the record convinces us that the trial court's finding in this regard was not erroneous. Furthermore, after carefully reviewing the evidence in light of the factors set out inGreen Oil Co. v. Hornsby, supra, for determining whether an award of punitive damages is excessive, we cannot say that the amount of punitive damages assessed by the jury exceeded an amount that will accomplish society's goals of punishment and deterrence.
The evidence was sufficient to warrant submitting the question of punitive damages to the jury, and the record reveals that the defendants' culpability was probably found by the jury to stem from their recklessness in involving themselves in the business ventures, or, characterized more appropriately, the misadventures, of Joe Mitchell,[2] and from allowing Mitchell to jeopardize the plaintiffs' interests in the partnership. The potential for harm here was great, in that each of the plaintiffs could have conceivably had a greater economic loss as a result of his or her investments in the partnership. Likewise, the actual economic loss to each of the plaintiffs was not insignificant. The jury awarded Tichansky $7,050, the amount of his investment in the partnership; it awarded Scholz $10,525, the amount of her investment in the partnership;[3] Reynolds's loss, when adjusted by subtracting the amount of tax benefits that he enjoyed by virtue of his investment, was $5,671.66; and Windham's loss, when adjusted by subtracting the amount of tax benefits that he enjoyed by virtue of his investment, was $10,410.25. Finally, the evidence, as developed at the post-judgment hearing, shows that both of the defendants are doctors, each earning in excess of $200,000 per year and each owning equity in certain assets, which in Fraser's case amounts to approximately $213,600 and in Lewis's case amounts to approximately $48,000.
A verdict awarding punitive damages is not considered to be unconstitutionally excessive until the defendant against whom it has been rendered produces evidence that the amount is greater than a sum necessary to accomplish society's goals of punishment and deterrence. Green Oil Co. v. Hornsby,539 So.2d 218 (Ala. 1986), is an example of a case where the verdict was shown to be excessive. In the present case, however, the trial court, considering the culpability of the defendants, the potential for harm, the actual harm that resulted from the defendants' actions, and the defendants' individual earnings and assets, found from conflicting evidence that the punitive damages assessed against the defendants did not exceed an amount necessary to punish them for their actions and to deter them and others similarly situated from engaging in similar conduct in the future. After a thorough review of the evidence, we are not convinced that the trial court was wrong.
Accordingly, we affirm the judgment pertaining to the assessment of punitive damages. However, unless, within 30 days from this date, Reynolds accepts and files a remittitur, pursuant to Ala. Code 1975, § 12-22-71, of $2,808.45 of his compensatory damages award against Fraser and $5,618.89 of his compensatory damages award against Lewis, the judgment for Reynolds pertaining to the award of compensatory damages will be reversed and the case remanded. Likewise, unless, within 30 days from this date, Windham accepts and files a remittitur of $5,929.92 of his compensatory damages award against Fraser and $11,859.83 of his compensatory *Page 453 
damages award against Lewis, the judgment for Windham pertaining to the award of compensatory damages will be reversed and the case remanded. On acceptance and filing of the remittiturs specified above, the judgment will stand affirmed for the reduced amount.
AFFIRMED IN PART AND AFFIRMED CONDITIONALLY IN PART.
HORNSBY, C.J., and SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ALMON, J., concurs in the result.
MADDOX, J., concurs in part and dissents in part.
[1] We pointed out in our original opinion in this case that the apportioned verdict "would be illegal and, thus, would have to be set aside but for the fact that the record shows the issue to have been waived by the defendants at trial,"588 So.2d at 445, by their failure to object to the court's charge allowing apportionment.
[2] As we noted in our original opinion, Mitchell failed to appear at trial and a default judgment was entered against him. Mitchell did not appeal from that judgment.
[3] As previously noted, the defendants proved that Tichansky and Scholz also enjoyed certain tax benefits as a result of their investments, but failed to present to the jury sufficient proof of the amount of those benefits. Had that proof been provided, the jury's award of compensatory damages to Tichansky and Scholz would have to be reduced accordingly.