**KEENE CORPORATION, Appellant,**

v.

**Ollis E. KIRK and Josephine Wittner, Appellees.**

**No. 05–92–01112–CV.**

Court of Appeals of Texas, Dallas.

Dec. 20, 1993.

---

**576**

Ned A. Stewart, Jr., John R. Mercy, Texarkana, for appellant.

Brent M. Rosenthal, Dallas, for appellees.

Before THOMAS, CHAPMAN and ROSENBERG, JJ.

1. We collectively identify Ollis E. Kirk and Josephine Wittner as appellees unless the context requires otherwise.

2. John Wittner's exposure to asbestos-containing products resulted in his becoming covered with asbestos dust at the workplace. Josephine Wittner, John's wife, was exposed to asbestos dust by coming into contact with John, by washing his work clothing, and through housekeeping.

## OPINION

THOMAS, Justice.

Keene Corporation appeals from a jury verdict in favor of appellees Ollis E. Kirk and Josephine Wittner for asbestos-caused personal injuries.[1] In nine points of error, Keene generally complains that the trial court erred in (i) submitting improper definitions of "proximate cause" and "unreasonably dangerous"; (ii) submitting "wantonness" to the jury as an independent theory of recovery; (iii) limiting cross-examination of an expert witness; (iv) overruling the contention that the punitive awards violated the Due Process Clause of the Fourteenth Amendment; and (v) upholding the punitive awards in their entirety. We overrule all points of error and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Ollis Kirk and John Wittner had been employed at Alabama shipyards. During their employment, Kirk and John Wittner were exposed to asbestos-containing products.[2] Monoblock was one of the asbestos-containing products to which Kirk and John Wittner were exposed.[3]

Appellees sued Keene and others for asbestos-related disease. Appellees alleged theories of negligence, gross negligence, and products liability. After answering the negligence and products-liability questions adversely to Keene,[4] the jury awarded each appellee $100,000 compensatory damages and $1,000,000 punitive damages. The trial court deducted settlement amounts and entered judgment in favor of appellees.

## DEFINITION OF "PROXIMATE CAUSE"

■ In the first two points of error, Keene complains that the trial court erred in sub-

3. Baldwin Ehret Hill manufactured and sold Monoblock. Keene purchased Baldwin Ehret Hill in 1968 after the Monoblock had been manufactured and sold.

4. Keene was the only defendant remaining when the case was submitted to the jury.

mitting a definition of proximate cause that omitted the foreseeability element. The court's charge defined proximate cause as:

> "PROXIMATE CAUSE" means that cause which in the natural and probable sequence of events, and without the intervention of any new or independent cause produces the injury and without which such injury would not have occurred. There may be more than one proximate cause of an event. The negligence of two or more parties may concur and combine to proximately cause injuries. Causes concur and combine when they join together to produce a given result. If one is negligent and such negligence concurs or combines with negligence of another party or a third person who is not a party to this lawsuit and the two combine to produce an injury, each negligent party is liable for the resulting injury and the negligence of each will be deemed the proximate cause of the injury.

In support of this argument, Keene relies upon *Alabama Power Co. v. Taylor*, 293 Ala. 484, 306 So.2d 236 (1975).[5] Keene notes that the *Taylor* court said: "In Alabama, foreseeability is the cornerstone of proximate cause." *See Taylor*, 306 So.2d at 249. From this, Keene argues the trial court erred in charging the jury as it did rather than as Keene requested. Keene misplaces its reliance upon *Taylor*.

Initially, we disagree with Keene's assertion that the statement in *Taylor* was the "holding" of the court. Rather, the *Taylor* court made its statement in the context of reviewing a directed verdict on issues of negligence. *See Taylor*, 306 So.2d at 246, 249. Hence, the *Taylor* court was not concerned with whether a trial court erred in defining proximate cause.

The Alabama Supreme Court considered an instruction on proximate cause that was essentially identical to the definition given in the present case. *See General Motors Corp. v. Edwards*, 482 So.2d 1176, 1192 (Ala.1985), *overruled on other grounds by Schwartz v. Volvo N. Am. Corp.*, 554 So.2d 927 (Ala.1989). The *Edwards* court also stated: "In Ala-

bama, as elsewhere, foreseeability is the cornerstone of proximate cause." *See Edwards*, 482 So.2d at 1194 (citing *Taylor*, 306 So.2d at 249). Nonetheless, the *Edwards* court cited Alabama precedent and concluded the trial court correctly instructed the jury on proximate cause. *See Edwards*, 482 So.2d at 1194.

The *Edwards* court noted that the instructions were taken directly from the Alabama pattern jury instructions and were correct. *See Edwards*, 482 So.2d at 1193. The definition at issue in our case also defined proximate cause pursuant to the applicable Alabama pattern jury instruction. *See* ALABAMA PATTERN JURY INSTRUCTIONS—CIVIL, § 33.00 (Lawyers Co-operative Pub. Co. 1974). The note accompanying the pattern jury instruction states: "This charge can be used in any instance when a definition of 'proximate cause' is needed." *See* ALABAMA PATTERN JURY INSTRUCTIONS—CIVIL, § 33.00 notes on use (Lawyers Co-operative Pub. Co. 1974). The Alabama Supreme Court recommended the use of the Alabama Pattern Jury Instructions in its order of April 19, 1973.

The issue now before us has been considered by another Texas court of appeals. *See Keene Corp. v. Rogers*, 863 S.W.2d 168, 174–75 (Tex.App.—Texarkana 1993, no writ). In *Rogers*, the court considered Keene's complaint that the trial court erred in giving the jury a definition of proximate cause that omitted the foreseeability element. The definition of proximate cause submitted in *Rogers* is identical to that given in the present case. *See Rogers*, 863 S.W.2d at 174. The *Rogers* court noted the Alabama Supreme Court's approval of the submitted definition and concluded: "Foreseeability is not specifically mentioned in the Alabama definition of proximate cause but is implicit in the phrase 'natural and probable sequence of events.'" *See Rogers*, 863 S.W.2d at 175. We agree with the reasoning of the *Rogers* court. Accordingly, we overrule the first and second points of error.

## DEFINITION OF "UNREASONABLY DANGEROUS"

■ In the third and fourth points of error, Keene complains that the trial court

---

**5.** The parties agree that Alabama substantive law applies in the resolution of this issue.

erred in defining "unreasonably dangerous" and in failing to substitute its tendered definition. Keene argues that the case was tried on a marketing-defect or failure-to-warn theory but that the definition given applies only to cases tried on a manufacturing-defect theory.

In support of this argument, Keene cites *Ford Motor Co. v. Pool*, 688 S.W.2d 879, 881 (Tex.App.—Texarkana 1985), *aff'd in part and rev'd in part*, 715 S.W.2d 629 (Tex.1986). We conclude that Keene's Texas authority is not controlling. The parties agree that the substantive law of Alabama governs the present case. The trial court granted Keene's request to take judicial notice of *King v. S.R. Smith, Inc.*, 578 So.2d 1285 (Ala.1991); *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976); and *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala.1976). We will, therefore, look to these cases judicially noticed for guidance on this issue.

■ Our reading of the cases convinces us that under Alabama law, a product is unreasonably dangerous when it is not fit for ordinarily intended purposes. *See King*, 578 So.2d at 1287; *Atkins*, 335 So.2d at 142; *Casrell*, 335 So.2d at 133. These cases demonstrate the Alabama Supreme Court's reliance upon the Restatement in defining when a product is not fit for ordinarily intended purposes. *See Atkins*, 335 So.2d at 141, 142, 144–51 (although the Restatement is not binding authority, court indicated section 402A and its comments provide guidance in defining unreasonably dangerous and appended section 402A and its comments to opinion). We conclude that the submitted definition of unreasonably dangerous is in accord with the Alabama Supreme Court's use of the term.

We find further support for our conclusion in section 32.12 of the Alabama Pattern Jury Instructions—Civil. Section 32.12 defines "defect" as follows:

The plaintiff charges that such (product) (chattel) was defective in (manufacturing) (design) (*its warning*) (its instructions) when used as it was intended or was rea-

sonably foreseeable to be used. *Defective means unreasonably dangerous.*

ALABAMA PATTERN JURY INSTRUCTIONS—CIVIL, § 32.12 (Lawyers Co-operative Pub. Co. 1974) (emphases added). The wording of the definition indicates that it is applicable in failure-to-warn cases. The note accompanying section 32.12 states that defective may mean "unreasonably dangerous, that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to the community as to its characteristics...." *See* ALABAMA PATTERN JURY INSTRUCTIONS—CIVIL, § 32.12 notes on use (Lawyers Co-operative Pub. Co. 1974). Accordingly, we reject Keene's argument that the trial court provided an erroneous definition of unreasonably dangerous.

■ Keene also complains of the following part of the trial court's definition of "unreasonably dangerous":

If a manufacturer or seller places goods on the market that are imminently dangerous when put to their intended purpose and the defendant knows or should know that the goods can create danger when used in their customary manner, the defendant must exercise reasonable diligence to make such danger known to the person likely to be injured by the product.

Keene argues this part of the trial court's definition was unrelated to any of the issues posed by the questions in the charge. Keene further contends that the jury had *no* way of knowing that the definition had *anything* to do with questions three and four.[6] As a result, Keene argues, the instruction was an improper comment on the weight of the evidence.

■ A trial court shall not in its charge comment directly on the weight of the evidence. *See* TEX.R.CIV.P. 277. Improper comment on the weight of evidence occurs when the trial court indicates an opinion as to the truth or accuracy of the facts in issue. *Cf. Armes v. Campbell*, 603 S.W.2d 249, 251 (Tex.Civ.App.—El Paso 1980, writ ref'd

---

6. Question three asked whether the products were unreasonably dangerous. Question four inquired whether the unreasonably dangerous con-

dition was a proximate cause of the complained-of injuries.

n.r.e.). In deciding whether the definition was an impermissible comment on the weight of the evidence, we consider the trial court's charge in its entirety. *See Briseno v. Martin,* 561 S.W.2d 794, 796 (Tex.1977).

In construing the entire charge, we note that the trial court instructed the jury to accept its definitions of words used in the questions. The complained-of definition begins with the words "UNREASONABLY DANGEROUS." The only questions that use the term "unreasonably dangerous" are the third and fourth questions. We, therefore, reject the argument that the definition provided the jury *no* way of knowing that it had *anything* to do with questions three and four. Accordingly, we overrule the third and fourth points of error.

## WANTONNESS

■ In its fifth point of error, Keene complains that the trial court erred by treating wantonness as a theory of recovery upon which a compensatory damage award could be based.

■ There is no error in the submission of any jury question if the jury's findings on the remaining issues are sufficient to support the judgment and there is no confusion by the jury or other prejudice shown by the complaining party. *See Various Opportunities, Inc. v. Sullivan Invs. Inc.,* 677 S.W.2d 115, 120 (Tex.App.—Dallas 1984, no writ). The jury answered the issues of negligence and strict liability in tort adversely to Keene. Therefore, the jury's findings on negligence and strict liability sufficiently support the award of compensatory damages. Additionally, Keene has not shown the charge to have caused jury confusion or other prejudice. *Cf.* TEX.R.APP.P. 81(b)(1); *Various Opportunities,* 677 S.W.2d at 120. We overrule the fifth point of error.

## CROSS–EXAMINATION

■ In its sixth point of error, Keene complains that the trial court erred by not allowing it to attack the credibility of Dr. Joseph K. Wagoner, an epidemiologist. Dr. Wagoner's testimony was relevant to when manufacturers of asbestos-containing products should have known that the products could harm persons and whether asbestos products were unreasonably dangerous.

Appellees moved in limine to exclude criticism of Dr. Wagoner's earlier research about the carcinogenicity of beryllium. The trial court granted the motion, and the record contains an offer of proof tendered by Keene. The offer of proof included criticism of the beryllium research that questioned Dr. Wagoner's objectivity.

Keene complains that the trial court erred in limiting cross-examination of Dr. Wagoner. It is argued that the criticism was a proper subject of cross-examination because it was relevant to Dr. Wagoner's disposition to truthfully testify. In support of this argument, Keene cites rule 607 of the Texas Rules of Civil Evidence and *French v. Brodsky,* 521 S.W.2d 670, 675 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.). Appellees argue that the criticism was hearsay, collateral, and irrelevant. Thus, they assert that the trial court did not abuse its discretion in excluding this evidence.

We considered a similar complaint in *Keene Corp. v. Gardner,* 837 S.W.2d 224 (Tex.App.—Dallas 1992, writ denied). In *Gardner,* Keene complained that the trial court would not allow it to impeach Dr. Wagoner's testimony with expert criticism of his beryllium research. *See Gardner,* 837 S.W.2d at 229. We concluded in *Gardner* that the trial court did not abuse its discretion by excluding the criticism of the beryllium research. *See Gardner,* 837 S.W.2d at 230. We again reject Keene's complaint.

■ Our review of the record shows an additional reason to reject Keene's complaint. After Keene began its cross-examination of Dr. Wagoner, the trial court conferred with counsel. At the conclusion of the conference, the trial court granted appellees' motion in limine about the use of the criticism in Dr. Wagoner's cross-examination.

■ The purpose of a motion in limine is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury. *See Hartford Accident & Indem. Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex.1963). A motion in

limine merely precludes reference to the subject of the motion without first obtaining a ruling on the admissibility of those matters outside the presence of a jury. *See CLS Assocs., Ltd. v. A__ B__,* 762 S.W.2d 221, 224 (Tex.App.—Dallas 1988, no writ).

■ The trial court's order granting a motion in limine is not, however, a final ruling on the evidence. *See Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.,* 715 S.W.2d 658, 662 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). The granting or overruling of a motion in limine will not, in and of itself, constitute reversible error. *See Bifano v. Young,* 665 S.W.2d 536, 541 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). To be entitled to complain on appeal that the trial court erroneously excluded evidence pursuant to a motion in limine, the complaining party must offer the evidence and secure an adverse ruling from the court. *See Roberts v. Tatum,* 575 S.W.2d 138, 144 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *see also Tempo Tamers, Inc.,* 715 S.W.2d at 662–63.

After the trial court granted the motion in limine, Keene's counsel continued to cross-examine Dr. Wagoner. Counsel also conducted recross-examinations. During the evidentiary portion of the trial, however, counsel did not obtain an adverse ruling on the admissibility of the criticism evidence. *Cf. Lakeway Land Co. v. Kizer,* 796 S.W.2d 820, 827 (Tex.App.—Austin 1990, writ denied); *CLS Assocs., Ltd.,* 762 S.W.2d at 224; *Roberts,* 575 S.W.2d at 144. Absent a timely attempt to tender the evidence or obtain an adverse ruling, Keene has nothing to complain about on appeal. *Cf. CLS Assocs., Ltd.,* 762 S.W.2d at 224; *Tempo Tamers, Inc.,* 715 S.W.2d at 663; *Roberts,* 575 S.W.2d at 144. Accordingly, we overrule the sixth point of error.

## PUNITIVE DAMAGES DUE PROCESS CLAUSE

■ In the seventh and eighth points of error, Keene argues that its motion for a directed verdict and motion for judgment notwithstanding the verdict should have been granted because the award of punitive damages violated the Due Process Clause of the United States Constitution. *See* U.S. Const. amend. XIV.[7] In particular, Keene argues that repetitive awards of punitive damages for the same course of conduct violates due process. Keene asserts that as of December 31, 1991, it was liable for approximately $26,000,000 in punitive damages as a result of 270 adverse verdicts in asbestos cases. Further, Keene contends that upholding the award of punitive damages in the present case would aggravate an already-existing "overkill" of punitive damages.

Courts have voiced concern about an "overkill" effect of such awards. *See, e.g., King v. Armstrong World Indus., Inc.,* 906 F.2d 1022, 1033 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2236, 114 L.Ed.2d 478 (1991) (citing *Roginsky v. Richardson–Merrell, Inc.,* 378 F.2d 832, 839 (2d Cir.1967)). Keene concedes, however, that no appellate court has held repetitive awards of punitive damages for the same course of conduct to be violative of due process.

The United States Supreme Court has stated that the Due Process Clause of the Fourteenth Amendment imposes substantive limits beyond which penalties may not go. *See TXO Prod. Corp. v. Alliance Resources Corp.,* —— U.S. ——, ——, 113 S.Ct. 2711, 2718, 125 L.Ed.2d 366 (1993) (plurality opinion). However, the Supreme Court has not considered the issue of whether punitive damages for the same course of conduct violates due process.

The Fifth Circuit, in addressing the issue of whether punitive damages in a mass-tort context violates due process, has consistently rejected the due-process argument now made by Keene. *See Glasscock v. Armstrong Cork Co.,* 946 F.2d 1085, 1096 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992); *McCleary v. Armstrong World Indus., Inc.,* 913 F.2d 257, 261 (5th Cir.1990); *Edwards v. Armstrong World Indus., Inc.,* 911 F.2d 1151, 1155 (5th Cir.1990); *King,* 906 F.2d at 1033.

7. The Fourteenth Amendment provides in pertinent part: "nor shall any State deprive any person of life, liberty, or property, without due process of the law...." U.S. Const. amend. XIV.

At least two Texas courts of appeals have had similar due-process issues before them. The Texarkana Court of Appeals decided the issue adversely to Keene's position. *See Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 687 (Tex.App.—Texarkana 1991, writ denied), *cert. denied,* —— U.S. ——, ——, ——, 113 S.Ct. 2339, 3037, 3064, 124 L.Ed.2d 250 (1993). Although the Corpus Christi Court of Appeals did not reach the issue, *see Celotex Corp. v. Tate,* 797 S.W.2d 197, 208–09 (Tex.App.—Corpus Christi 1990, no writ), a concurring opinion concluded that the due-process argument was not compelling. *See Tate,* 797 S.W.2d at 209 (Benavides, J., concurring).

■■■■ The common-law method for assessing punitive damages does not in itself violate due process. *See Pacific Mut. Ins. Co. v. Haslip,* 499 U.S. 1, 17, 111 S.Ct. 1032, 1043, 113 L.Ed.2d 1 (1991); *Pool,* 813 S.W.2d at 687 (noting every state and federal court that has considered question of whether punitive damages are unconstitutional has so held) (citing *Haslip,* 499 U.S. at 17, 111 S.Ct. at 1043). There is no principle in law limiting recovery of punitive damages to the first claimant. *See Glasscock,* 946 F.2d at 1096–97 (personal-injury case involving Texas substantive law). Each plaintiff injured by asbestos-containing products has, when warranted, a cause of action and a right to seek punitive damages. *See Glasscock,* 946 F.2d at 1096. In rejecting the due-process argument, the *Pool* court stated:

While we recognize that there are numerous cases that have been decided and numerous cases are pending concerning damages claims based upon exposure to asbestos, this Court cannot dictate policy in a mass tort context, but can only decide the cases involved in the present suit. Such broad policy considerations are left to the Supreme Court of this state and the United States and to the appropriate legislative bodies.

*Pool,* 813 S.W.2d at 687. The Fifth Circuit reached a similar conclusion. *See Glasscock,* 946 F.2d at 1097 ("If there is to be further control of repeated punitive damage awards, the solution must be found through legislation."); *see also King,* 906 F.2d at 1033 (noting lack of legislative solution). We too conclude that the higher courts and the appropriate legislative bodies should resolve such policy considerations. We overrule the seventh and eighth points of error.

## AMOUNT OF PUNITIVE DAMAGES

■■■ In its ninth point of error, Keene complains that the trial court erred by upholding the jury's punitive-damages awards in their entirety. We disagree.

■■■■ Keene filed a motion for new trial and a supporting brief in which it requested the trial court to review the jury's award of punitive damages under the factors listed by the Alabama Supreme Court in *Green Oil Co. v. Hornsby,* 539 So.2d 218, 223–24 (Ala. 1989).[8] In the motion, Keene argued applica-

8. The parties agree that the issue of whether the punitive damages were excessive must be reviewed in light of the *Green Oil* factors. In determining whether the verdict is excessive, *Green Oil* authorizes a trial court to consider the following non-exclusive list of factors:

(1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the actual or likely harm is slight, the damages should be relatively small. If grievous, the damages should be much greater.
(2) The degree of reprehensibility of the defendant's conduct should be considered. The duration of this conduct, the degree of the defendant's awareness of any hazard that his conduct has caused or is likely to cause, and any concealment or "cover-up" of that hazard, and the existence and frequency of similar past conduct should all be relevant in determining this degree of reprehensibility.
(3) If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss.
(4) The financial position of the defendant would be relevant.
(5) All the costs of litigation should be included, so as to encourage plaintiffs to bring wrongdoers to trial.
(6) If criminal sanctions have been imposed on the defendant for his conduct, this should be taken into account in mitigation of the punitive damages award.
(7) If there have been other civil actions against the same defendant, based on the same conduct, this should be taken into account in mitigation of the punitive damages award.

tion of the *Green Oil* factors required the trial court to set aside or substantially reduce the punitive damages. The trial court, in a letter to counsel, applied all *Green Oil* factors and overruled the motion.[9]

Keene contends that the trial court's *Green Oil* analysis was procedurally and substantively erroneous. Initially, we discuss the procedural complaint, wherein Keene argues that the trial court improperly refused to consider evidence of other civil actions based on the same conduct. We conclude this procedural argument is not properly before us.

Keene makes this argument on appeal for the first time in a supplemental brief.[10] In filing the supplemental brief, Keene contended that it was to clarify issues that arose at oral argument and to supplement its seventh, eighth, and ninth points of error. The brief states that it is submitted under rule 1:74(d) of this Court's local rules. *See* 5TH TEX.APP. (DALLAS) LOC.R. 1:74(d) ("Supplemental briefs may be filed without leave of court only if no new points of error are raised.").

We conclude, however, that the procedural complaint presents, in effect, a new point of error. In the ninth point of error of its original brief, Keene complains that the trial court erred in upholding the punitive damages awards. The argument in support of that complaint addresses whether Alabama post-verdict procedures apply and whether the trial court erred in its application of the *Green Oil* factors. The procedural complaint in the supplemental brief, however, complains of the trial court's refusal to consider post-verdict evidence. Keene's original brief contains no suggestion of this procedural complaint. We conclude, therefore, that the supplemental brief does not meet the requirements of rule 1:74(d) insofar as it addresses Keene's procedural complaint. *See* 5TH TEX.APP. (DALLAS) LOC.R. 1:74(d). Thus, we will not address that portion of Keene's argument.

Keene also contends that the trial court substantively erred in applying the *Green Oil* factors. Keene argues that the complained-of error resulted in the trial court's refusal to reduce or preclude the awards.

██ Each side argues that Alabama law provides the standard of review. A defendant who feels a jury's award is excessive may move for remittitur and a new trial in the trial court and is entitled to a *"de novo"* review of the jury's verdict on appeal. *See Central Ala. Elec. Coop. v. Tapley,* 546 So.2d 371, 376–77 (Ala.1989).

██ The Alabama Supreme Court has set forth rules governing *de novo* review of damages. Where damages are left to the sound discretion of the jury, a remittitur or new trial should not be ordered on the ground of excessiveness of the jury's verdict except in those cases where the court can clearly see that the verdict is based on bias, passion, prejudice, corruption, or other improper motive or cause, *Olympia Spa v. Johnson,* 547 So.2d 80, 88 (Ala.1989), or exceeds an amount that will accomplish society's goals of punishment and deterrence. *See Fraser v. Reynolds,* 588 So.2d 448, 451 (Ala.1991). The appellate court is bound by a presumption of correctness of the amount of punitive damages rendered by the trier of fact. *See Shoals Ford, Inc. v. Clardy,* 588 So.2d 879, 884 (Ala.1991). Where the trial court refuses to grant a new trial because it does not believe the verdict to be excessive, the favorable presumption attending the jury's verdict is thereby strengthened. *See Olympia Spa,* 547 So.2d at 88. We conduct our review with these standards in mind.

██ **1. Relationship of award to actual and likely harm.** The jury awarded each appellee punitive damages of $1,000,000. The awards amounted to ten times the compensatory awards. The Alabama Supreme Court repeatedly has refused to hold that

---

*See Green Oil,* 539 So.2d at 223–24 (quoting *Aetna Life Ins. Co. v. Lavoie,* 505 So.2d 1050, 1062 (Ala.1987) (Houston, J., concurring)).

**9.** Under Alabama law, if a defendant properly moves the trial court to do so, the trial court is obligated to state on the record the reasons for either interfering with the jury's verdict, or refus-

ing to do so, on grounds of excessiveness of the damages. *See Hammond v. City of Gadsden,* 493 So.2d 1374, 1379 (Ala.1986).

**10.** The record contains no motion seeking leave to file the supplemental brief and no order granting leave to file it.

punitive damages must be mathematically proportionate to compensatory damages awarded. In fact, the court has stated: "The essential purpose of punitive damages would be thwarted if we required that they conform to any mathematical equation." *Reserve Nat'l Ins. Co. v. Crowell,* 614 So.2d 1005, 1009 (Ala.1993) (quoting *Associates Fin. Servs. Co. v. Barbour,* 592 So.2d 191, 199 (Ala.1991)). Decisions on punitive damages are made on a case-by-case basis. *See Barbour,* 592 So.2d at 199 (court willing to uphold punitive damages awards in excess of $1,000,-000 when facts warrant such award).

Keene does not specifically address this factor on appeal. In support of its motion for new trial, however, Keene contended appellees suffered only "slight" harm. *Cf. Green Oil,* 539 So.2d at 223 (slight harm warrants relatively small damages; grievous harm supports much greater damages). The jury found appellees suffered asbestos-related injuries and awarded each appellee $100,-000 in compensatory damages. The compensatory awards indicate the harm was not slight. Additionally, the record contains testimony that each appellee suffered asbestos-caused actual harm. The testimony also indicates that appellees' asbestos-caused health problems will likely lead to further serious and expensive harm. We agree with the trial court that this factor does not operate to mitigate the awards.

■ **2. Degree of reprehensibility.** First, Keene argues that there is no evidence that Keene or Baldwin Ehret Hill sold Monoblock *knowing* that it would likely cause injury to persons situated such as appellees. Rather, Keene contends, appellees' case was based upon a premise that Keene *should have known* that Monoblock was dangerous.

We reject Keene's implied contention that punitive damages should be mitigated unless the record discloses that a defendant *knew* the conduct would likely cause harm. *Green Oil* does not require the level of knowledge suggested by Keene. *Green Oil* merely states that courts should consider the *degree* of defendant's *awareness* of hazard that conduct is *likely* to cause. *See Green Oil,* 539 So.2d at 223.

■ Keene also argues that the record contains no evidence of concealment. However, lack of concealment is but one factor in determining the degree of reprehensibility. *See Green Oil,* 539 So.2d at 223. Thus, this factor alone does not operate to mitigate the damages.

■ **3. Profitability of wrongful conduct.** Keene argues that the evidence demonstrates it has not profited from asbestos sales. We reject this argument.

*Green Oil* does not suggest that a lack of profitability operates to mitigate an award. The *Green Oil* court explained: "If the wrongful conduct was profitable to the defendant, the punitive damages should remove the profit and should be in excess of the profit, so that the defendant recognizes a loss." *Green Oil,* 539 So.2d at 223. Hence, the factor only applies when wrongful conduct is profitable.

■ **4. Keene's financial position.** Keene argues that it is being sued by thousands of other claimants in asbestos litigation. Keene asserts that its assets will be exhausted before all claimants are compensated. Keene contends that upholding the award in the present case will hasten depletion of funds from which it could pay compensatory damages.

Compensation of other claimants is not our concern. We are to determine whether bias, passion, prejudice, corruption, or other improper motive resulted in awards that exceeded the amount necessary to accomplish punishment and deterrence. *See Green Oil,* 539 So.2d at 222. Keene's argument does not support mitigation.

■ **5. Costs of litigation.** This factor is not specifically addressed on appeal. In its motion for new trial, however, Keene argued that its costs of defending other lawsuits favored setting aside or reducing the punitive awards. The trial court concluded that this factor is concerned with appellees' costs. We agree. *Cf. Green Oil,* 539 So.2d at 223–24 (all costs of litigation should be considered *to encourage plaintiffs to bring wrongdoers to trial* ). The trial court concluded appellees' costs to be substantial.

585

Thus, this conclusion would not operate to mitigate the awards.

**6. Criminal sanctions for same conduct.** The trial court concluded, and the parties do not dispute, that this mitigating factor is not applicable to the present case.

**7. Other civil actions.** Keene argues that imposition of punitive damages in the present case, in addition to those awarded in other cases, will hasten its destruction.

Punitive damages should sting in order to deter. Only in the rarest of cases should they be large enough to destroy. *See Green Oil*, 539 So.2d at 222 (quoting *Ridout's-Brown Serv., Inc. v. Holloway*, 397 So.2d 125, 127–28 (Ala.1981)). Punitive damages must not exceed an amount that will accomplish society's goals of punishment and deterrence. *See Green Oil*, 539 So.2d at 222.

Keene argues that the awards should have been precluded or substantially reduced based upon statements by the trial court that awards in other actions, if considered, would sufficiently deter and punish Keene. However, the trial court refused to consider other civil actions. Accordingly, the trial court acknowledged the existence of other actions to be a "conjectural possibility." We already have concluded that Keene did not properly present on appeal its complaint of the trial court's refusal to consider other actions. Therefore, we reject Keene's argument based upon the trial court's conjectural statements. *Cf. Fraser*, 588 So.2d at 452 (verdict awarding punitive damages is not considered excessive until defendant against whom it has been rendered produces evidence that amount is greater than sum necessary to accomplish society's goals of punishment and deterrence).

Keene also argues that the trial court based its decision under this factor on faulty reasoning. The trial court stated that even if it considered other civil actions, reducing the awards in the present case to amounts necessary for punishment and deterrence would require deleting the awards or reducing them to nominal amounts. The trial court stated that it was unsure if Alabama law authorized such reductions. Keene argues that the trial court was authorized to so reduce the awards. We need not consider the argument, however, because we have concluded that Keene has not properly presented its complaint of whether the trial court erred by refusing to consider other civil actions.

Keene offers two more arguments. First, Keene argues that it has done nothing to warrant punishment. This conclusion is based on the argument that asbestos-containing products were manufactured by Keene's predecessor company, Baldwin Ehret Hill, and not by Keene.[11] Second, Keene urges that the awards do not further the goal of deterrence because Keene does not sell asbestos-containing products. We consider these arguments to be irrelevant to the factor of other civil actions based upon the same conduct and, therefore, reject them.

After review of the record and briefs, we conclude that the trial court's *Green Oil* analysis does not require reversal. The record does not clearly demonstrate the awards to be based upon bias, passion, corruption, or other improper motive or that the awards exceeded amounts necessary to punish and deter. We overrule the ninth point of error.

We affirm the trial court's judgment.

---

**11.** This assertion is weakened by Keene's statement made elsewhere in its appellate brief that: "Although Keene did not manufacture the Monoblock in question, it does not dispute in this case that it is liable for the acts and omissions of Baldwin Ehret Hill."