# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 1, 2019

Lyle W. Cayce
Clerk

No. 17-41042

AMBROSIO LONGORIA,

      Plaintiff - Appellee

v.

HUNTER EXPRESS, LIMITED; SARBJIT SINGH BASATIA,

      Defendants - Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, SOUTHWICK, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

Cases with the simplest of facts can raise difficult legal issues on appeal. So it is with this appeal from a three-day personal injury trial that resulted in a verdict of more than $2.8 million for the plaintiff. The appeal raises issues of error preservation, whether state or federal law governs challenges to the excessiveness of damages in diversity cases, and the role of the "maximum recovery" rule. After wading through these sometimes murky waters, we vacate the award for future mental anguish as there was no evidence to support any such award and vacate as excessive the award for future pain and suffering and remand that award for a remittitur determination.

No. 17-41042

I.

Ambrosio Longoria and Sarbjit Singh Basatia are commercial truckdrivers. They got into an accident in Laredo. Basatia went straight in a turn-only lane while Longoria was properly making a left. The trucks collided, rendering both inoperable. Longoria's truck was pushed back into the intersection. Basatia's truck continued moving forward until it collided with the shoulder of the road, bringing it finally to a halt.

Longoria walked away from the accident. But a few hours later, he began experiencing back pain that prompted him to visit the emergency room. The hospital took a few x-rays and gave him some painkillers, then let him go. Longoria ended up just taking ibuprofen that night.

The next day, Longoria awoke in severe pain. He went to a physical therapy center and began three months of rehabilitation. He did not work during that time. At the end of this physical therapy, he was cleared to return to work. But that was not the end of Longoria's treatment. The therapy center referred Longoria to a back specialist for continued care.

As part of that care, the doctor ordered an MRI to assess how Longoria's back was doing. The MRI showed Longoria had a bulging disc, a disc pressuring a spinal nerve, and a herniated disc. The doctor gave Longoria two options to manage the pain: a steroid shot or back surgery. Fearing surgery, Longoria opted for the shot.

The injection wore off after a few months and the pain returned. Faced with the same options of back surgery or short-term relief via the shot, this time Longoria chose surgery. During surgery, the doctor discovered that the injury was not a simple herniated disc but a bone spur protruding from Longoria's spine that was pinching his nerves.

Longoria underwent another three-month recovery period. Ultimately, the operation alleviated some but not all of his pain. To this day, he has back

No. 17-41042

pain that regularly wakes him up at night. And every morning Longoria must stretch for an hour to manage the pain. He typically must repeat that hour of stretching later in the day because the discomfort returns. Around twice a week, Longoria also takes ibuprofen for his back. He also is on a permanent 50-pound lifting restriction.

Longoria filed this negligence action against Basatia and Basatia's employer, Hunter Express. The jury found Defendants fully liable for the accident. It awarded Longoria over $2.8 million in damages allocated as follows:

- Past physical pain: $150,000;
- Future physical pain: $1 million;
- Past mental anguish: $120,000;
- Future mental anguish: $140,000;
- Past medical expenses: $94,243;
- Past physical impairment: $200,000;
- Future physical impairment: $1.1 million;
- Past disfigurement: $1,000; and
- Past lost wages: $15,000

Defendants sought a new trial, arguing that there was no basis for two of the damage awards (future mental anguish and future physical impairment) and that two others (future physical pain and past physical impairment) were excessive. The district court denied the motion.

## II.

The four issues Defendants press on appeal do not replicate those they urged as the basis for a new trial. Two are the same. They continue to argue that there is no support for the future mental anguish award, and they renew their challenge to the excessiveness of the future pain award. Asking the trial court to order a new trial for those reasons preserved the issues for our consideration.

No. 17-41042

But Defendants add two new challenges. They contend for the first time that a new trial should have been ordered because: (1) there is no basis for finding any past mental anguish, and (2) the award for future physical impairment is excessive. Because the trial court had no opportunity to assess whether problems with these awards might warrant a new trial, Defendants have forfeited these issues. *Bueno v. City of Donna*, 714 F.2d 484, 493–94 (5th Cir. 1983) ("It is well-established that there can be no appellate review of allegedly excessive or inadequate damages if the trial court was not given the opportunity to exercise its discretion in a motion for a new trial."); *see also Vargas v. Lee*, 317 F.3d 498, 499 n.1 (5th Cir. 2003).[1]

Defendants did not dispute the past mental anguish award on any basis in the trial court. As to future physical impairment, the new trial motion addressed it only under the "Sufficiency of Evidence" heading, which claimed a "complete absence of proof." A separate heading for "Excessive Damages Award" does not mention future physical impairment. In one sense, a claim that the award should be zero would seem to encompass as a "lesser included" a claim that any amount is excessive. But the inquiries are distinct, as the new trial motion recognizes in separating them. The sufficiency challenge asks only whether there is any evidence for a jury's award; if there is, the judge's job is at an end. An excessiveness challenge requires more extensive scrutiny, including—as will be seen—consideration of verdicts in similar cases. And we review the district court's decision on remittitur only for an abuse of discretion. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 438–39 (1996). We cannot assess whether such discretion was abused if the district court was not asked

---

[1] Forfeiture in this context can be overcome in exceptional circumstances. *Bueno*, 714 F.2d at 494. But that applies only to pure questions of law, which excessiveness review is not, and miscarriages of justice, which the facts of this case do not present. *Id.*; *Pounds Photographic Labs, Inc. v. Noritsu Am. Corp.*, 818 F.2d 1219, 1226 (5th Cir. 1987).

to exercise it in the first instance. *Bueno*, 714 F.2d at 493–94. Because the Defendants did not ask the district court to conduct that review as part of its discretionary call on whether to grant a new trial, the claim that the future physical impairment award was excessive was not preserved for appeal. *Id.*; *Baker v. Dillon*, 389 F.2d 57, 58 (5th Cir. 1968) (stating that there "can be no appellate review [on the ground of excessive damages] if the trial court was not given an opportunity to exercise its discretion on a motion for new trial"); *see also C.M. Asfahl Agency v. Tensor, Inc.*, 135 S.W.3d 768, 796 (Tex. App.— Houston [1st Dist.] 2004, no pet.) ("A request for relief by remittitur must, therefore, be preserved in the trial court by a motion that seeks remittitur, whether filed independently or as part of a motion for new trial.").

## III.

Moving on to the grounds for a new trial that Defendants did present to the district court, we first consider the challenge to the excessiveness of the award for future pain.

This is a diversity case. At first glance, that would indicate that the question of what law applies to excessiveness review is straightforward. More than two decades ago, the Supreme Court held that state law governs "review [of] the size of jury verdicts" in diversity cases. *Gasperini*, 518 U.S. at 418, 430–31; *see also Fair v. Allen*, 669 F.3d 601, 604 (5th Cir. 2012) (explaining that *Gasperini* required application of Louisiana's standard for new trial motions). Yet the parties focus on a federal judge-made doctrine—the maximum recovery rule—for evaluating excessiveness.[2]

---

[2] Longoria argues Defendants did not cite the maximum recovery rule in arguing excessiveness to the district court. We need not resolve whether this constituted forfeiture because we end up concluding the result is the same under either the state standard Defendants did urge below or the federal rule. While we conclude the maximum recovery rule does play a role in determining the amount of remittitur that should be set on remand, as we explain that rule helps the plaintiff by preserving as much of the award as the law

No. 17-41042

Some background on the maximum recovery rule is helpful at this point. Judge Rubin, during his time on the district court, provided an early explanation of the rule in deciding the amount of a remittitur after our court had remanded a case with an excessive verdict. *See Glazer v. Glazer*, 278 F. Supp. 476, 478–82 (E.D. La. 1968), *cited in Gorsalitz v. Olin Mathieson Chem. Corp.*, 429 F.2d 1033, 1047 (5th Cir. 1970) (adopting maximum recovery rule at circuit level). He noted that courts had followed three approaches in setting the amount of a remittitur that a plaintiff could accept in lieu of a new trial: award the lowest amount the jury could have awarded, award the highest amount the jury could have awarded, or set an amount the court would have awarded. *Glazer*, 278 F. Supp. at 478–79 (citing 6A MOORE'S FED. PRAC., at 3743–44 (2d ed. 1966)). Judge Rubin opted for the highest award the law allowed—thus the "maximum recovery" label—because that approach preserves as much of the jury's award as possible and, relatedly, is the only remittitur approach he thought compatible with the Seventh Amendment. *Id.* at 481–82. Although these rationales for the maximum recovery rule are usually not apparent because it applies when a verdict is being reduced, the rule is actually a pro-jury and pro-plaintiff one.

Over time we have developed a method for determining the maximum amount a jury could have awarded. The inquiry looks to other published decisions from the relevant jurisdiction (in a diversity case, the forum state) involving comparable facts. *Lebron v. United States*, 279 F.3d 321, 326 (5th Cir. 2002). The rule allows some leeway, so it permits a verdict at 150% of the highest inflation-adjusted recovery in an analogous, published decision. *Puga*

---

permits. So a defendant cannot forfeit a rule that benefits the plaintiff. And the decision to offer a remittitur option in lieu of a new trial is a discretionary act of the court.

No. 17-41042

*v. RCX Solutions, Inc.*, 922 F.3d 285, 298 n.12 (5th Cir. 2019); *Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 369 n.8 (5th Cir. 2002).[3]

But we have been inconsistent about where in the analysis the rule has a role. Sometimes we apply maximum recovery at the outset to determine whether the damages are excessive. *See, e.g.*, *Moore v. M.V. Angela*, 353 F.3d 376, 384 (5th Cir. 2003); *Lebron*, 279 F.3d at 328. Other times we use the rule only to determine how much of a reduction is warranted after deciding the award is excessive.[4] *See, e.g.*, *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 (5th Cir. 2001); *Denton v. Morgan*, 136 F.3d 1038, 1046 (5th Cir. 1998). This difference may matter to the *Erie* question.

The state/federal issue is presented because Texas does not use the maximum recovery rule. It instead conducts a more holistic assessment at both stages of the inquiry. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex. 1986) (explaining that factual sufficiency of the evidence is the "sole remittitur standard"). Texas review for excessiveness uses the same standard as any factual sufficiency claim. *Id.* The question boils down to whether the evidence introduced at trial would allow a reasonable, fair-minded jury to come to the verdict the actual jury reached. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Systems Landfill, Inc.*, 434 S.W.3d 142, 159–60 (Tex. 2014). The strong deference afforded the jury's judgment is overcome when the jury's damage award is "so factually insufficient or so against the great weight and

---

[3] One of the inconsistencies in maximum recovery caselaw is whether a 150% or 133% multiplier applies. *Compare Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 (5th Cir. 2001) (150% multiplier), *with Lebron*, 279 F.3d at 326 (133% multiplier). We resolved that inconsistency by explaining that we had applied the 133% multiplier only in bench trials. *See Thomas*, 297 F.3d at 369 n.8. The 150% multiplier applies to jury trials. *Id.* (citing *Salinas v. O'Neill*, 286 F.3d 827, 831 n.6 (5th Cir. 2002)).

[4] Judge Rubin thought the rule addressed both problems: "The same standard that guides a court in deciding that a verdict is so excessive as to require a new trial should guide it in determining the amount of remittitur." *Glazer*, 278 F. Supp. at 482.

preponderance of the evidence as to be manifestly unjust." *Pope*, 711 S.W.2d at 624 (citing *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986)). Although the guiding principle is factual sufficiency, a court may look to approved awards in other cases to help determine if the award under review is excessive. *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 250 (Tex. App.—Texarkana 2005, no pet.). So whereas a comparison to other verdicts is the lodestar for the federal maximum recovery rule, it is only part of the Texas inquiry.

Does the federal maximum recovery rule or the more general Texas inquiry govern a diversity case? We have already noted that *Gasperini* is on point. Some of our precedent recognizes that. *Fair*, 669 F.3d at 604; *Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 735 (5th Cir. 2011); *Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008). Yet our law is again inconsistent. As recently as this year, we have applied the maximum recovery rule in a diversity case to answer the initial question whether damages are excessive. *See Puga*, 922 F.3d at 297; *see also Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003). But most of our cases do not grapple with the continued use of the maximum recovery rule after *Gasperini* because the parties often do not raise the *Erie* issue. *See Puga*, 922 F.3d at 297; *Vogler*, 352 F.3d at 156.

There may be a solution to the *Erie* puzzle in what other circuits do. The Second Circuit now applies the the maximum recovery rule only at the second step—determining size of the remittitur—explaining that the rule operates only to "minimize the extent of judicial inference with . . . the jury's domain." *Rangolan v. Cty. of Nassau*, 370 F.3d 239, 244 (2d Cir. 2004) (quotation omitted); *see also Foradori*, 523 F.3d at 505 n.21 (Dennis, J., writing for himself) (describing the rule as operating simply to protect the "constitutional allocation of fact-finding to the jury"). Other circuits have done the same post-*Gasperini*: Use state law to determine whether damages are excessive but

retain a role for the maximum recovery rule in setting any remittitur. *See Wright v. Byron Fin., LLC*, 877 F.3d 369, 374 (8th Cir. 2017); *Jabat, Inc. v. Smith*, 201 F.3d 852, 857–58 (7th Cir. 2000); *Koster v. Trans World Airlines, Inc.*, 181 F.3d 24, 36 (1st Cir. 1999); *see also* CYCLOPEDIA OF FED. PROC. § 34:28 n.2 (3d ed.) (recognizing role for maximum recovery role at remittitur stage); 2A FED. PROC., LAWYER'S ED. § 3:885 (explaining that the maximum recovery rule is used to determine the size of the remittitur). We agree that it does not override state substantive law to use the maximum recovery rule as a guidepost in setting a remittitur, which is itself a discretionary act. *See* 11 Charles Alan Wright et al., FED. PRAC. & PROC. § 2815 (3d ed.) ("The final determination whether a new trial or remittitur is appropriate is committed to the sound discretion of the trial court.").

For the threshold excessiveness determination where *Gasperini* seems to apply, we need not definitively reconcile our caselaw and resolve the issue because the outcome is the same under the Texas or federal standard. *See Learmonth*, 631 F.3d at 738 n.4 (considering award under state law and the maximum recovery rule because parties discussed both standards). Under either Texas sufficiency review or the federal maximum recovery rule, the $1 million award for future physical pain is too high.

Here is the evidence of future pain. Longoria must perform an hour of stretching and warming up every morning. Then, most afternoons, the pain returns, and he must repeat the stretching. Around twice a week, the stretching is insufficient pain management, and he must take ibuprofen. The pain is severe enough that it wakes him up roughly four times per week. Longoria describes the pain as a "burning" and "tingling" sensation. He also sometimes experiences a feeling of numbness. Longoria's doctor believes the current pain will be permanent. And there is a risk that the two discs still

No. 17-41042

facing pressure from the bone spur will pinch a nerve and cause further pain, so Longoria is on a permanent 50-pound lifting restriction.

This pain is significant. But an award of $1 million is "contrary to the overwhelming weight of the evidence," given that Longoria can mostly manage the pain by stretching and taking over-the-counter medicine.[5] *Cresthaven Nursing Residence v. Freeman*, 134 S.W.3d 214, 228 (Tex. App.—Amarillo 2003, no pet.). Such a large award cannot be said in this situation to "fairly and reasonably compensate" Longoria. *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996). Although these types of awards are necessarily imprecise, the jury "cannot simply pick a number and put it in the blank." *Id.* This million-dollar award looks close to that. Pain that can largely be managed through nonprescription methods does not warrant such a sizeable recovery.

Jury awards in comparable cases, a factor in the Texas analysis and the benchmark under the federal rule, support the view that $1 million is excessive. In one case, the plaintiff, like Longoria, tried numerous remedies before eventually undergoing surgery. *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 904 (Tex. App.—Texarkana 2004, pet. denied). The surgery helped with the pain but did not cure it. Due to pain, the plaintiff could no longer work in his former profession. And like Longoria, he was put on a lifting restriction. *Id.* at 904–05. That plaintiff received just $25,000 for future physical pain and mental anguish combined. *Id.* at 887. In another case, the plaintiff ruptured two discs, had muscle atrophy in one arm, and developed an irregular spinal curvature. *Roberts v. Tatum*, 575 S.W.2d 138, 141 (Tex. App.—Corpus Christi 1978, write ref'd n.r.e.). Like Longoria, he described

---

[5] It bears noting that the inconvenience of managing the pain, and other ways in which the lingering injuries inhibit Longoria's enjoyment of life activities, are accounted for in the separate award for future physical impairment.

numbness and burning sensations. *Id.* The plaintiff received today's equivalent[6] of approximately $100,000 for both future physical pain and mental anguish. *Id.* The highest recovery for future pain we found in a case bearing even a semblance of similarity to Longoria's is $500,000. *Primoris Energy Servs. Corp. v. Myers*, 569 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2018, no pet.). That plaintiff was hit by a truck while on his four-wheeler. Like Longoria, he underwent major back surgery and was left with two herniated discs that could result in further injury if a lifting restriction is not followed. *Id.* at 761. As in this case, the plaintiff's doctor did not prescribe any painkillers, but pain persists. *Id.* If anything, the pain in *Primoris Energy* seems marginally greater than what the evidence shows in this case. For example, the lifting restriction for that plaintiff was 20–30 pounds. *Id.* The half-a-million-dollar award upheld in that case thus seems to be the outer range of awards for this type of future pain. Even when the *Primoris Energy* verdict is multiplied as the maximum recovery rule allows, Longoria's million-dollar award is still excessive. Under either the federal or state standard, the full award cannot stand.

The next question is remittitur, the step at which we agree with other circuits that the maximum recovery rule still has a role. We have discretion to set that amount or remand for the district court to do so. *Koster*, 181 F.3d at 36. Following the path we took more than 50 years ago in the remand that led Judge Rubin to adopt the maximum recovery rule, we will allow the district court to finalize the amount. *Glazer v. Glazer*, 374 F.2d 390, 414 (5th Cir. 1967); *see also Puga*, 922 F.3d at 298 (remanding for the district court to

---

[6] We adjusted the award to account for inflation. For the calculation, we used the date April 2016, when Longoria's accident occurred. *See Wharf Cat, Inc. v. Cole*, 567 S.W.2d 228, 233 (Tex. App.—Corpus Christi, 1978, writ ref'd n.r.e.); *Puga*, 922 F.3d at 298 n.12. We used the CPI Inflation Calculator from the Bureau of Labor Statistics, available at https://data.bls.gov/cgi-bin/cpicalc.pl. *See Puga*, 922 F.3d at 298 n.12.

finalize the remittitur amount).  Having presided over the trial, it has greater familiarity with the evidence of future pain from which to evaluate which cases are comparable.  We thus remand for that determination.

## IV.

Legal complexities do not plague the final question we address about the future mental anguish award.  This time Defendants urge that we follow the state standard, which asks whether the jury's verdict is "so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust."  *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).  The Supreme Court of Texas has "admonished courts to closely scrutinize" mental anguish awards.  *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54 (Tex. 1997).  To recover for mental anguish, a plaintiff generally must provide evidence that the anguish created a "substantial disruption" in the plaintiff's "daily routine" or caused a "high degree of mental pain and distress."  *Saenz*, 925 S.W.2d at 614.  The anguish must be "more than mere worry, anxiety, vexation, embarrassment, or anger."  *Id*. (quoting *Parkway Co. v Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)).

The evidence of future anguish is sparse.  Longoria points to his fear that he may be unable to keep working as a truck driver.  He testified that this occupation is his "childhood dream" and that without it, he could not support his family.  But Longoria is cleared to work, and no doctor indicated his ability to work may change in the future.  His understandable concern for the future is not the high degree of distress or frequent disruption Texas law requires.  Even when a plaintiff was no longer working as a result of injuries, her worries that her family could lose its house did not "rise to the level of compensable mental anguish."  *Saenz*, 925 S.W.2d at 614.  It follows that Longoria's more speculative fear is not compensable.

No. 17-41042

Longoria also testified that he "sometimes [feels] just useless" due to his inability to help with many jobs around the house or ride roller coasters with his grandchildren. This too fails to rise to the level of a substantial disruption in his routine that would support an award for mental anguish. *See Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 598 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (denying a future mental anguish award to a plaintiff whose doctor testified that he appeared depressed and faced a "bleak future unless he received psychiatric treatment").

The record does not support any award for future mental anguish.

\*\*\*

We AFFIRM the district court as to the damage awards for past mental anguish and future physical impairment, VACATE the full award for future mental anguish, and VACATE and REMAND the future physical pain award for the district court to determine a remittitur.

13