# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2022

Lyle W. Cayce
Clerk

No. 20-11230

Alfonso Parra; Maria Parra,

*Plaintiffs—Appellees*,

*versus*

Interstate Express, Incorporated,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:18-CV-268

Before Davis, Willett, and Oldham, *Circuit Judges*.
Per Curiam:*

Defendant, Interstate Express, Incorporated ("Interstate"), moved for a new trial and remittitur after a jury rendered a verdict in favor of Plaintiffs in this personal injury action. Interstate appeals the judgment and denial of its motion, arguing that the district court abused its discretion and prejudiced Interstate's right to a fair trial when it excluded the testimony of

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-11230

one of its experts after technical difficulties arose during the expert's live video testimony. Interstate further asserts that the jury's verdict was against the great weight and preponderance of the evidence, excessive, and manifestly unjust because the Plaintiffs' only expert was not qualified to testify and his opinions were unreliable, and because Plaintiffs' counsel made improper remarks during closing arguments that prejudiced the jury against it. As discussed below, Interstate's arguments are without merit. Therefore, we AFFIRM the district court's judgment.

## I. BACKGROUND

In February 2016, Roy Lester Douglas, an Interstate employee, was driving a tractor owned by Interstate and hauling a trailer owned by All Ways Transport, Inc. ("All Ways"). While pulling out of a truck stop onto U.S. Highway 81, Douglas failed to yield the right of way and struck the pickup truck being driven by Plaintiff, Alfonso Parra ("Alfonso"). The collision caused the pickup truck to flip over, and Alfonso sustained severe injuries as a result.

Alfonso and his wife, Maria Parra ("Maria"), who was not in the vehicle at the time of the accident, filed suit against Interstate, All Ways, and Douglas[1] in federal district court based on diversity jurisdiction. Interstate stipulated to Douglas's negligence in causing the accident. It also stipulated that the total amount of incurred and paid medical bills which Alfonso could recover was $27,475.51. However, Interstate disputed "whether any brain injury was sustained." The case proceeded to a jury trial in August 2020, a few months after the beginning of the COVID-19 pandemic.

---

[1] Douglas is now deceased from causes unrelated to the accident.

2

No. 20-11230

At the trial, Alfonso testified regarding the accident and his resulting injuries. His wife Maria and their two daughters also testified regarding the changes in Alfonso after the accident. Plaintiffs' expert, Dr. Fulbright, a clinical neuropsychologist, testified regarding his opinion that Alfonso suffered a brain injury as a result of the accident. He explained that another neuropsychologist, Dr. Jones, had examined Alfonso in January 2019, but that Dr. Jones had since died. The parties stipulated that Dr. Jones's and Dr. Fulbright's expert reports would be admitted into evidence.

For its case, Interstate called Dr. Bob Gant, a clinical neuropsychologist, who appeared via videoconference. After initially having some difficulty with video equipment, Interstate's counsel was able to complete the direct examination of Dr. Gant. When Plaintiffs' counsel attempted to start her cross-examination of Dr. Gant, however, the video equipment failed, so the district court adjourned trial early for the day to let the parties tend to the equipment. The next morning, Plaintiffs' counsel began cross-examining Dr. Gant, but the video equipment again failed. The district court requested that the next witness be called.

Interstate then called Dr. Daragh Heitzman, a neurologist. Dr. Heitzman testified that based on his examination of Alfonso and his review of the medical evidence, he did not believe that Alfonso had "a continuing brain injury." He testified that his opinion regarding the neuropsychological testing of Alfonso "rested largely on a conversation [he] had with Dr. Gant." Dr. Heitzman further testified that based on his conversation with Dr. Gant, and the objective evidence that he obtained with his medical testing, he did "not find any abnormality with reasonable medical probability."

After Dr. Heitzman finished testifying, Defendants requested to resume the cross-examination of Dr. Gant. As described in further detail below, after conferring with counsel, the district court denied the request and

instructed the jury not to consider any of Dr. Gant's testimony. Over Plaintiffs' objection, the district court did allow Dr. Gant's preadmitted expert report to remain in evidence.

The jury returned a verdict in favor of Plaintiffs, awarding Alfonso $77,400 in economic damages and $429,000 in noneconomic damages, and Maria $20,000 in economic damages and $175,000 in noneconomic damages. The district court rendered final judgment in favor of Plaintiffs for a total of $541,375.51 to Alfonso and $195,000 to Maria. Thereafter, Interstate filed a motion for new trial and remittitur. The district court denied the motion. Interstate filed a timely notice of appeal.

## II.  DISCUSSION

On appeal, Interstate reasserts the arguments contained in its motion for new trial and remittitur. It argues that the district court abused its discretion and prejudiced Interstate's right to a fair trial when it excluded the testimony of Dr. Gant after technical difficulties arose during his live video testimony. Interstate further asserts that the jury's verdict was against the great weight and preponderance of the evidence, excessive, and manifestly unjust because the Plaintiffs' only expert, Dr. Fulbright, was not qualified to testify and his opinions were unreliable. Finally, Interstate argues that Plaintiffs' counsel made improper remarks during closing arguments that prejudiced the jury against it.

Under Rule 59(a), the district court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."[2] Although the rule does not specify the circumstances when a new trial is warranted, this court has noted that they

---

[2] FED. R. CIV. P. 59(a)(1)(A).

No. 20-11230

include "if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."[3] "We will reverse the trial court's denial of a motion for new trial only when there is a clear showing of an abuse of discretion."[4]

## A.

Interstate argues that a new trial should have been granted because it was deprived of its right to a fair trial. Specifically, the district court committed prejudicial error when it excluded Dr. Gant's expert testimony without cause. Interstate further argues that the district court's ruling was not harmless because it impaired Interstate's ability to present evidence on critical questions about causation and damages.

This court reviews the exclusion of expert testimony, and evidentiary rulings in general, for abuse of discretion.[5] "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[6] Furthermore, even if the district court abused its discretion, the party seeking a new trial has the burden of showing that the error was harmful and prejudicial to its case.[7]

## 1.

On the second day of trial, Interstate's expert, Dr. Gant, testified live by videoconference. After initially having difficulty hearing counsel's

---

[3] *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted).

[4] *Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008) (citations omitted).

[5] *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623, 626 (5th Cir. 2018).

[6] *Id.* at 626 (internal quotation marks and citation omitted).

[7] *Id.* at 627.

questions, counsel was able to complete his direct examination by moving closer to the computer and kneeling down to ask the questions. When Plaintiffs' counsel began to cross-examine Dr. Gant, however, the videoconference equipment again started to fail. At that point, the district court decided to adjourn the trial for the day and stated that the cross-examination of Dr. Gant would be completed the next morning. The court stated that it was "disappointed in [the] electronics and video testimony" and wanted to make sure that the trial continued "without a hitch" so that the jurors could get the "best view and the best witness" from the remote viewings. The trial court also stated: "This is not anybody's fault, this is just the world that we live in and we have to try to adapt."

After the jurors left the courtroom, the district court expressed its frustration with the technical difficulties encountered during Dr. Gant's testimony. The court instructed counsel to "spend tonight . . . before everyone goes home and before the courthouse is locked" tending to the equipment to ensure that there would be no "glitches" with the video testimony the next day.

Unfortunately, the next day, after Plaintiffs' counsel started her cross-examination of Dr. Gant, the video conference equipment again began to fail. At that point, the district court expressed his disapproval of video testimony, stating that he would "never, ever agree to allow this type of testimony in trial again." The parties attempted to get the video testimony back up and running, and Dr. Gant started to testify again, but then the connection was lost again. The district court instructed Interstate to call its next witness.

Interstate's next witness was Dr. Heitzman. When Dr. Heitzman completed his testimony, Interstate requested that the cross-examination of Dr. Gant be resumed. At that point, the district court called a conference with the lawyers out of the presence of the jury. After bringing the jury back in,

the district court stated to the jurors that although "every effort was made on behalf of defendant to present Dr. Gant's testimony, . . . we had too many issues, and I have to make the finding that you are not to consider any of the testimony you heard from Dr. Gant, period, either on direct or cross-examination." The district court noted, however, that Dr. Gant's preadmitted expert report was in the record. The district court lamented that it was "stuck in an unfortunate situation where I do have to get the case moving and the technology just did not work." In response, Plaintiffs' counsel requested that the court additionally strike Dr. Gant's expert report, which request the district court denied. Interstate also objected to not being able to complete Dr. Gant's videoconference testimony.

The district court's reasons for striking the testimony were that the remote testimony "just [didn't] work," "time was of the essence," and it needed "to get the members of the public in an out," while trying to assure justice is done "in the middle of a pandemic." The case was "one of the oldest on his docket, and [it was] not fair for either party to continue the case any longer." The district court also asked whether Dr. Gant was in his office in Dallas and, if so, gave him the opportunity to go to Forth Worth to testify that afternoon, but Dr. Gant was in Colorado. The district court stated that it understood the parties' objections, but that it believed it had no other choice.

As stated above, "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[8] The district court's decision to strike the testimony of Dr. Gant could not be based on an erroneous view of the law because there simply is no law, and no precedent from this court, addressing the situation

---

[8] *Id.* at 626 (internal quotation marks and citation omitted).

with which the district court was faced. As both parties acknowledge, the district court did not exclude Dr. Gant's testimony based on Federal Rule of Evidence 702, which sets out the factors for the admissibility of expert testimony, or on Federal Rule of Civil Procedure 37, which authorizes the district court to impose sanctions on a party under certain circumstances. Rather, the district court excluded Dr. Gant's testimony because of recurring technical problems with the videoconference equipment and his concerns about getting the jurors "in and out" of the courthouse while "in the middle of a pandemic." The district court also felt that continuing the trial under the circumstances would have been unfair for either party given that it was one of the court's "oldest cases."

As Plaintiffs point out, Federal Rule of Evidence 403 allows the district court to exclude relevant evidence if its probative value is substantially outweighed by a danger of, inter alia, unfair prejudice, undue delay, wasting time, or needlessly presenting cumulative evidence. Federal Rule of Evidence 611(a) also provides that the district court "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence" to "make those procedures effective for determining the truth" and "avoid wasting time." Although the district court did not specifically mention these rules, the district court's statements on the record reflect that it considered similar factors in deciding to exclude Dr. Gant's testimony.

Moreover, contrary to Interstate contentions, the record reflects that the district court gave Interstate reasonable allowances to present Dr. Gant's testimony. The district court adjourned early on the second day of trial to allow the parties time to tend to the video equipment to ensure that it would be back up and running the next day.

No. 20-11230

Concerns about getting the jurors back home in the middle of pandemic is not (unsurprisingly) one of the factors listed in any of the Federal Rules. The record reflects the district court's efforts in reaching a compromise that was fair to all parties and the jurors. The district court knew it might be wasting more time if it allowed Dr. Gant to continue testifying with the recurrent technical difficulties. At the same time, it tried to minimize the harm to Interstate's case by allowing Dr. Gant's preadmitted expert report to remain in evidence. As there is no rule or precedent on point, and the district court's decision reflected that it considered the interests of the parties and the jurors in reaching its decision, and made efforts to achieve fairness for both sides, we cannot say that it abused its discretion.

**2.**

Even if there was an abuse of discretion, Interstate fails to meet its burden of showing that the error was harmful and prejudicial to its case.[9] Interstate argues that the district court's ruling impaired "its ability to present evidence on critical questions about causation and damages," but the record evidence reflects otherwise.

Although the district court struck the live video testimony of Dr. Gant, the district court ordered that Dr. Gant's preadmitted expert report remain in evidence for the jury to consider. Moreover, Interstate's other expert, Dr. Heitzman, testified on medical causation, and his expert report also was preadmitted. He testified that based on his examination of Alfonso and his review of the medical evidence, he did not believe that Alfonso had "a continuing brain injury." He also stated that his opinion regarding the neuropsychological testing of Alfonso "rested largely on a conversation [he] had with Dr. Gant." Dr. Heitzman further testified that

---

[9] *Id.* at 627.

based on his conversation with Dr. Gant, and the objective evidence that he obtained with his medical testing, he did "not find any abnormality with reasonable medical probability."

Thus, although Dr. Gant's testimony was excluded, his opinions were contained not only in his preadmitted expert report (which remained in the record), but also in the live testimony of Dr. Heitzman. Dr. Heitzman also testified regarding medical causation and damages to Alfonso's arm, back, and neck, as well as his brain. Interstate's argument that the district court's ruling impaired its ability to present evidence on critical questions involving causation and damages is without merit.

Based on the foregoing, Interstate fails to show that the district court's exclusion of Dr. Gant's live video testimony constituted harmful error. Therefore, Interstate is not entitled to a new trial on this basis.

**B.**

Interstate next argues that it is entitled to a new trial because the jury's verdict on damages was against the great weight of the evidence, excessive, and manifestly unjust. Specifically, Interstate argues that there was insufficient evidence to support the jury's damages awards because Plaintiffs' only expert, Dr. Fulbright, failed to present reliable testimony and was not a qualified expert. Interstate also argues that counsel's improper comments during closing argument were prejudicial to its case.

**1.**

As Plaintiffs assert, however, Interstate failed to preserve its challenge to the qualifications and testimony of Dr. Fulbright by not objecting adequately below.

"[F]or a litigant to preserve an argument for appeal, it must press and not merely intimate the argument during the proceedings before the district

court."[10] Interstate acknowledges that its objection to Dr. Fulbright's testimony at trial was merely: "Objection, Your Honor. No foundation, experience, training or education." Interstate's objection followed an interaction between Plaintiffs' counsel and Dr. Fulbright during his direct testimony, in which Dr. Fulbright asked counsel, "You want me to talk about the physical injury – the brain injuries?" Plaintiffs' counsel responded, "Let's talk about – however way you want to take it. Do you want to talk about his physical injuries first?" Dr. Fulbright responded, "All right," and then Interstate asserted its objection, which the district court immediately overruled.

Dr. Fulbright then proceeded simply to read the physical injuries "listed in the medical records," stating that he did not have to have a medical education to do so. The injuries included a seven-centimeter laceration to Alfonso's head, a left shoulder injury, bruising, and high blood pressure as well as a high pulse rate. Dr. Fulbright's testimony at that point did not consist of any opinions, but just a reading of what was contained in the medical records.

When Dr. Fulbright actually began to discuss his opinions regarding potential injuries to Alfonso's brain, Interstate did not object, and it never objected at any point during the remainder of Dr. Fulbright's direct examination. During its cross-examination of Dr. Fulbright regarding his education and qualifications, Interstate established that Dr. Fulbright was not a "medical doctor or an osteopathic doctor," and that as a neuropsychologist, he was in the subspecialty of "clinical psychology."

---

[10] *Weckesser v. Chicago Bridge and Iron, L.G.*, 447 F. App'x 526, 530 (5th Cir. 2011) (per curiam) (unpublished) (internal quotation marks and citation omitted). Unpublished opinions issued on or after January 1, 1996, are not precedential but may be persuasive. *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006).

Dr. Fulbright admitted he was not board certified. He also admitted that he had not reviewed Alfonso's medical records prior to the accident.

At no time during Dr. Fulbright's testimony did Interstate lodge an objection, or move to strike Dr. Fulbright's testimony, because he was not qualified to opine on whether Alfonso sustained any brain injury or because his opinions were unreliable. The first time Interstate argued that Dr. Fulbright was not qualified and his opinions unreliable was in its motion for new trial. However, the district court did not address Interstate's arguments on these issues.

Although the district court has discretion to consider an issue presented for the first time in a post-trial brief, when the district court does not exercise such discretion, the issue is not considered properly raised.[11] In this case, because Interstate raised its arguments regarding Dr. Fulbright for the first time in its motion for new trial, but the district court did not consider those arguments in denying the motion, we conclude that Interstate did not properly raise its arguments challenging Dr. Fulbright's testimony below.

"We do not ordinarily consider issues that are forfeited because they are raised for the first time on appeal."[12] There are exceptions to this rule, such as if the issue involves a challenge to the court's jurisdiction, or "it is a purely legal matter and failure to consider the issue will result in a miscarriage of justice."[13] Interstate's challenge to Dr. Fulbright's testimony does not fall within these exceptions. Therefore, the issue is forfeited, and we do not consider it.

---

[11] *Garriot v. NCsoft Corp.*, 661 F.3d 243, 248 (5th Cir. 2011).

[12] *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 398 (5th Cir. 2021).

[13] *Id.* (citations omitted).

No. 20-11230

**2.**

Interstate argues that the damages the jury awarded in favor of Plaintiffs are against the great weight and preponderance of the evidence, excessive, and manifestly unjust. Interstate asserts that because Dr. Fulbright's causation opinion is unreliable, "there simply is no competent evidence to support the jury's damages findings."

"In an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy."[14] Under Texas law, "review for excessiveness uses the same standard as any factual sufficiency claim."[15] "The question boils down to whether the evidence introduced at trial would allow a reasonable, fair-minded jury to come to the verdict the actual jury reached."[16]

As set forth above, Interstate forfeited its challenge to the admissibility of Dr. Fulbright's testimony by not properly preserving the issue for appeal. Because its challenge to the jury's damages award is based on its forfeited argument regarding Dr. Fulbright's testimony, Interstate's challenge to the damages award fails.

Furthermore, based on the evidence adduced at trial, the damages awarded by the jury were not excessive. Alfonso testified when the tractor trailer collided with his pickup truck, it caused his pickup truck to spin and roll over. He remembered having to crawl out of a window of the vehicle. He

---

[14] *Foradori v. Harris*, 523 F.3d 477, 497 (5th Cir. 2008) (citation omitted).

[15] *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019) (citation omitted).

[16] *Id.* (citation omitted).

sustained a very painful shoulder separation and head wound. The medical records indicated that the emergency room doctor diagnosed him with: "abdominal contusion, chest wall contusion, contusion of left shoulder, head injury acute without loss of consciousness, left shoulder strain and scalp laceration."

After the accident, Alfonso tried physical therapy for a separated shoulder, but his pain did not subside. Eventually, a specialist operated on his shoulder. Although the surgery increased his ability to move his shoulder, Alfonso testified that he still cannot lift his arm all the way above his head. He also testified that in the days and weeks following the accident, he lacked concentration and struggled to retain information. Additionally, Alfonso feels pressure on the top of his head and on his right side; he sometimes feels like he has an electric shock; and he cannot tolerate noises.

Alfonso's two daughters[17] testified regarding the changes in Alfonso after the accident. Laura testified that her father complained of pain in his shoulder and that he was unable to help around the house like he used to. She stated that her dad was very patient, but that after the accident, he became "irritated very easily." Guadalupe testified that Alfonso used to be very social and outgoing, but now he prefers to stay home and be alone. She said her relationship with her father had become distant because of his temper and lack of patience.

Dr. Fulbright opined that Alfonso suffered a brain injury as a result of the accident because both he and Dr. Jones observed, through their testing of Alfonso, that there was a "distinct change in [Alfonso's] behavior" and "changes in his cognitive functioning." Dr. Fulbright believed that the

---

[17] Laura Parra was 21 at the time of trial, and Guadalupe Parra was 26.

nature of the wreck, with the car "spinning and rolling and land[ing] upside down, was sufficient mechanical force to cause the injury."

Maria Parra, Alfonso's wife, testified that since the accident Alfonso's demeanor and character "changed a lot." He used to be "level-headed, very well centered, easygoing, patient." Maria testified that Alfonso appeared to have "entered in some type of depression," and their relationship was not the same. She also described instances where Alfonso just did not understand what they were doing and/or did not remember why they were doing certain things.

In light of the evidence adduced at trial, we cannot say that the damages awarded to Alfonso of $77,400 in economic damages and $429,000 in noneconomic damages, and to Maria of $20,000 in economic damages and $175,000 in noneconomic damages were against the great weight or preponderance of the evidence, excessive, or manifestly unjust.

**3.**

Interstate lastly argues that the jury's award was manifestly unjust because it was based on "passion or prejudice." Specifically, Interstate asserts that Plaintiffs' counsel improperly commented on the failure of Interstate's corporate representative to testify at trial and on the age of the tortfeasor driver during closing argument. Interstate contends that these comments prejudiced the jury against it.

As Plaintiffs point out, Interstate failed to object during closing argument to Plaintiffs' counsel's reference to the absence of Interstate's corporate representative at trial. "Absent a timely objection, reversal is generally not warranted based on counsel's improper statements alone. Rather, we consider the comments of counsel, the counsel's trial tactics as a

whole, the evidence presented, and the ultimate verdict."[18] Furthermore, "[w]e have found it particularly important whether or not statements made in closing argument were based on evidence in the record."[19] We have noted that "it is a particularly indefensible tactic to use closing arguments to bring before the jury damaging facts not in evidence and never established."[20]

The age of the tortfeasor driver was in the record, as it was contained in the Texas Peace Officer's Crash report which was admitted into evidence by agreement of both sides. During cross-examination, Interstate's expert, Dr. Heitzman, confirmed that the crash report indicated that the driver was 75 years old at the time of the accident. Furthermore, the jury obviously knew that Interstate's corporate representative was absent from trial and did not testify during the trial. Because Plaintiffs' counsel's comments during closing argument involved facts already known by the jury, Interstate's argument that the comments prejudiced the jury against it is without merit.

## III. CONCLUSION

Based on the foregoing, the district court's judgment is AFFIRMED.

---

[18] *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 778 (5th Cir. 2009) (citation omitted).

[19] *Id.* (citation omitted).

[20] *Id.* (internal quotation marks and citation omitted).