# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 28, 2022

Lyle W. Cayce
Clerk

No. 21–30353

FAUSTINE KIWIA,

*Plaintiff—Appellee*,

*versus*

BULKSHIP MANAGEMENT, A.S.,

*Defendant—Appellant*,

OSLO BULK BETA, A.S.,

*Intervenor—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20–CV–96

Before JONES, STEWART, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Faustine Kiwia lost three fingers while working as a stevedore aboard the *M/V Oslo Bulk 9*. Kiwia sued the vessel and two related entities alleging

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

negligence under § 5(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.* After a bench trial, the district court concluded that the *Oslo Bulk 9* crew negligently caused Kiwia's injuries and awarded Kiwia $1,076,873 in damages. Finding no clear error, we AFFIRM.

## I.

Coastal Cargo, a stevedoring company, hired Kiwia to work as a longshoreman on February 19, 2019. The same day, Coastal Cargo provided Kiwia with some basic training on his role, the types of cargo he would work with, and safety. Kiwia started working the next day. Ten days later, Coastal Cargo put Kiwia on the longshoremen gang responsible for offloading the *Oslo Bulk 9*, a handysize bulk carrier hauling bauxite ore.

After a brief gangway safety meeting, Kiwia and the other longshoremen started offloading the bauxite onto a barge rafted alongside the *Oslo Bulk 9*. Kiwia spent the morning assisting with opening and closing the barge's hatches as the crane operator dumped bauxite ore into the barge's holds. During the early afternoon, the longshoremen gang twice stopped work and closed the barge's hatches covers due to rain. After closing the barge's hatch covers the second time, the gang broke for lunch.

Returning back to the dock for lunch required the longshoremen to climb onto the *Oslo Bulk 9* using a Jacob's ladder and walk across the deck back to the gangway. Coastal Cargo personnel hung the Jacob's ladder from the *Oslo Bulk 9*'s outer deck railing near the vessel's No. 2 cargo hold. After reaching the last rung of the Jacob's ladder, the longshoreman would have to climb over the outside deck railing. Just beyond that railing lay the vessel's cargo hold opening. Each cargo hold opening was surrounded by a vertical bulkhead designed to keep water out, called a hatch coaming. On the *Oslo Bulk 9*, the cargo holds were covered by folding hatch covers. Folding hatch

covers consist of four large panels, driven by hydraulic rams, that fold up into two inverted "V"s on either side of the hold. The panels have steel wheels that roll along a raised rail on top of the hatch coaming.

Kiwia was the third or fourth longshoreman to ascend the Jacob's ladder. Just after Kiwia scaled the deck railing, with both feet on the inboard side of the deck, he placed his right hand on top of the hatch coaming directly in the path of where the folding hatch covers' steel wheels run. Kiwia planned to disembark the ship by walking aft and crossing the ship to the gangway on the starboard side, but, just as he reached the deck, his supervisor called him from the bow. Kiwia turned around in response with his hand still on top of the hatch coaming for balance.

Unbeknownst to Kiwia, an *Oslo Bulk 9* crewmember at the No. 2 hatch cover operating panel (located on the starboard side of the hatch) had started closing the cover some time before Kiwia reached the deck. The *Oslo Bulk 9* crew failed to warn the supervisor of the Coastal Cargo gang that they would be closing the hatch or perform a walkaround of the hatch before closing it. Kiwia testified that he did not notice the hatch cover closing himself because it moved slowly and was "imperceptibly quiet." Moreover, at the time, several stevedores were still working in the hold, which made closing the hatch unusual.

Moments after Kiwia placed his hand on top of the hatch coaming, the hatch cover's steel wheels trapped his gloved hand and severed his middle three fingers. Roy Hughes, Jr., who was working as the Coastal Cargo gang's flagman and standing about ten feet away from Kiwia, yelled out to the *Oslo Bulk 9* crewmember operating the hatch cover to stop the cover. Kiwia then freed what was left of his hand. At some point during this sequence of events, the hatch cover crushed Hughes's work bag as well.

Another Coastal Cargo employee rushed Kiwia to the hospital. Although Kiwia brought his severed index finger to the hospital, the nature of the injury prevented doctors from reattaching it. Doctors closed Kiwia's wounds after slightly shortening the bones in two of his severed fingers and then discharged him from the hospital. A few months later, Kiwia returned to the hospital with pain in one of his amputated fingers, which doctors diagnosed as symptomatic neuroma. Doctors performed surgery on the finger to address the symptomatic neuroma. The surgery was moderately successful in reducing the nerve–related pain.

Kiwia sued the *Oslo Bulk 9* and its owners for negligence under § 5(b) of the LHWCA. Under § 5(b), a stevedore "may seek damages in a third–party negligence action against the owner of vessel on which he was injured . . . ." *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 96 (1994). To prevail on a § 5(b) negligence claim, the plaintiff must prove duty, breach, causation, and damages. 1 Thomas J. Schoenbaum, Admiralty & Maritime Law § 7:14, at 703 (6th ed. 2020). In *Scindia Steam Navigation Co. v. De los Santos*, 451 U.S. 156 (1981), the Supreme Court clarified that a vessel owner owes stevedores three general duties. Relevant here, a vessel owner must exercise due care to the extent that it "actively involves itself in the cargo operations" and to "avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Scindia*, 451 U.S. at 167. This is known as the active control duty.

After a two–day bench trial, the district court concluded that the *Oslo Bulk 9* was negligent and awarded Kiwia $1,076,873 in damages. The district court premised its negligence finding on a breach of the active control duty. Based on contested evidence of industry custom, the district court concluded that reasonable care required the *Olso Bulk 9* crew to survey the vicinity of the hatch and verbally warn the Coastal Cargo gang's supervisor before

closing the hatch cover. The *Oslo Bulk 9* crew took neither measure and, as a result, the court found the defendants 50% at fault for Kiwia's injuries.[1] Further, the district court attributed no fault to Kiwia. The court awarded Kiwia $81,000 in past medical expenses, $46,000 in past lost wages, and $950,000 in general damages. The vessel defendants timely appealed.

## II.

Faced with an appeal from a final judgment in a bench trial, this court reviews legal issues de novo and findings of fact for clear error. *Rivera v. Kirby Offshore Marine, L.L.C.*, 983 F.3d 811, 816 (5th Cir. 2020). Questions concerning breach, causation, apportionment of fault, and the amount of damages are treated as factual issues subject to clear error review. *Deperrodil v. Bozovic Marine, Inc.*, 842 F.3d 352, 356, 358, 361 (5th Cir. 2016). "To reverse for clear error, this court must have 'a definite and firm conviction that a mistake has been committed.'" *Delahoussaye v. Performance Energy Servs., L.L.C.*, 734 F.3d 389, 392 (5th Cir. 2013) (quoting *Canal Barge Co. Inc. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000)). This court cannot substitute our view of the record for that of the district court absent clear error, even though we might have a different view of the record.

## III.

The vessel defendants contend that the district court erred by: (1) concluding that its crew breached the active control duty; (2) holding that the crew's alleged failure to notify the Coastal Cargo supervisor that the hatch cover would be closed or to maintain situational awareness while

---

[1] The district attributed the other 50% of fault to Coastal Cargo. But that holding is of little practical import because (1) liability is joint and several and (2) Coastal Cargo is Kiwia's employer (and is therefore statutorily immune under the LHWCA). *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260–63 (1979).

closing the hatch caused Kiwia's injury; (3) attributing no fault to Kiwia or by attributing less than 100% fault to Coastal Cargo; and (4) awarding excessive damages. We address each argument in turn.

First, breach. The district court found that "[b]efore closing the hatch cover, the exercise of reasonable care mandated that the relevant Oslo Bulk crewmember [(1)] warn the Coastal Cargo supervisor or foreman and [(2)] survey the vicinity of the hatch coaming to ensure that no individuals or objects were in the path of the closing cover." The vessel's crew failed on both accounts, the district court concluded, and, as a result, breached the active control duty. The defendants dispute that the vessel had a duty in these circumstances and that there was a breach. Assessing these issues, the court heard competing testimony of experts, a former supervisor of Coastal Cargo, Kiwia himself, and Hughes, the fellow longshoreman who witnessed Kiwia's injury and testified to facts relevant to whether and how longshoremen are or ought to be warned about vessel hatch closings.

Defendants devote a significant portion of their brief to challenging the veracity and accuracy of Hughes's testimony, but the court found him "highly credible." To the extent that the defendants' argument turns on Hughes's credibility, it is without merit. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) ("[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses . . . , that finding, if not internally inconsistent, can virtually never be clear error."). Any inconsistencies in Hughes's testimony were not critical enough to require the district court to disregard it.

Otherwise, while the evidence noted by defendants certainly contradicts that in favor of finding a duty and breach by the vessel crew, the trial court exercised its duty to weigh the conflicting evidence. We cannot find clear error on this record.

Second, causation.  In a § 5(b) lawsuit, an injured plaintiff must prove that the defendant's breach of a *Scindia* duty was a "substantial factor" in causing the injury.  *See Moore v. M/V Angela*, 353 F.3d 376, 388 (5th Cir. 2003) (quoting *Donaghey v. ODECO*, 974 F.2d 646, 649 (5th Cir. 1992)). Here, the district court found that (1) "[d]espite his inexperience, Kiwia would have responded appropriately to a warning to keep away from the hatch coaming" and (2) the hatch cover operator's lack of situational awareness and failure to survey the vicinity contributed to Kiwia's injuries. The defendants contend that these findings amount to clear error because no evidence indicates that, had the crew exercised reasonable care, Kiwia himself would have received a warning.  And given Kiwia's patent inexperience and lack of appropriate training, defendants stress, it is absurd to conclude that he would have understood or heeded a warning about the hatch cover closing.  Further, they posit, it is unclear how surveying the vicinity around the hatch cover *before* closing it could have prevented Kiwia's injury *while* the cover was closing.  The facts as to causation raise a close question, but we do not have a definite and firm conviction that the district court mistakenly found that the defendants' breach was a substantial factor in causing Kiwia's injuries.

Third, apportionment.  The "longshoreman's award in a [§ 5(b)] suit against a negligent shipowner [should] be reduced by that portion of the damages assignable to the longshoreman's own negligence . . . ." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 259–60 (1979) (citations omitted).  "[W]hen measuring the longshore worker's comparative fault, the worker's negligence is adjudged from the standpoint of a reasonable longshore worker under the circumstances." *Davis v. Portline Transportes Maritime Internacional*, 16 F.3d 532, 545 (3d Cir. 1994).  The district court attributed 50% fault to the *Oslo Bulk 9* for failing to exercise reasonable care, 50% fault to Coastal Cargo for failing to train Kiwia on the dangers posed by

hatch coamings, and no fault to Kiwia. "Given Kiwia's lack of knowledge on the dangers of the hatch coaming," the district court reasoned, he "acted reasonably in placing his hand on the hatch coaming to climb down from the ladder as he simply copied the more experienced longshoremen before him." The district court likewise noted that "Kiwia was an inexperienced longshoreman at the time of his injury" but that "any lack of knowledge or unfamiliarity he had with the operations [of a vessel] may be attributed to his employer for failing to advise [him] of those general dangers." The defendants suggest that the district court erroneously absolved Kiwia of any contributory negligence by measuring his negligence against an artificially low standard of care. But that argument is unsupported by the record. That Kiwia was inexperienced does not mean he lacked the minimum qualifications ordinarily possessed by longshore workers. Nor does the district court's finding that Coastal Cargo should have trained Kiwia on the pinch hazards posed by hatch covers require a finding that Kiwia was himself negligent.

Finally, damages. A damages award is excessive "only if it is greater than the maximum amount the trier of fact could properly have awarded." *Moore*, 353 F.3d at 384 (citing *Sosa v. M/V Lago Izabal*, 736 F.2d 1028, 1035 (5th Cir. 1984)). An award of damages is not excessive if it is less than 133% of the "highest inflation–adjusted recovery in an analogous, published decision." *Longoria v. Hunter Express, Ltd.*, 932 F.3d 360, 365 (5th Cir. 2019); *id.* at 365 n.3. Here, the district court awarded Kiwia $950,000 in general damages after considering the amount of general damages awarded for similar injuries in *Robertson v. Superior PMI, Inc.*, 600 F. Supp. 790 (W.D. La. 1985), *aff'd as modified*, 791 F.2d 402 (5th Cir. 1986), and adjusted for inflation. The defendants contend that was error because the plaintiff in *Robertson* suffered far more than Kiwia. Specifically, they point out that, among other things, Robertson lost four fingers instead of Kiwia's three, and

Kiwia returned to work much sooner than Robertson. *Robertson*, 600 F. Supp. at 794, 796. Notwithstanding those differences, the district court's reliance on *Robertson* does not amount to clear error. Robertson and Kiwia suffered relatively similar injuries. Moreover, the defendants did not identify any other factually analogous case that shows the damages award is excessive.

AFFIRMED.